THE STATE *v.* THE UNION NATIONAL BANK OF
MUNCIE, INDIANA ET AL.

[No. 17,990.   Filed July 17, 1896.]

RECEIVERSHIP.— *Appeal. — Practice. — Statute Construed.*— Where, after the appointment of a receiver, a judgment creditor appeared by attorney and asked and was permitted to intervene and move to set aside the order to appoint a receiver, and to dismiss the proceedings, and afterward filed an intervening petition to set aside such order and proceedings, which petition was by the court denied, and a motion for a new trial filed and overruled, an appeal from such rulings to the Supreme Court was in substantial compliance with section 1245, Burns' R. S. 1894 (1231, R. S. 1881).   *p. 544.*

SAME.— *Jurisdiction of Defendant.—Appearance by Non-resident Attorney.*—In an action for the appointment of a receiver, where no summons was issued or publication made against the defendant, an answer written and filed by plaintiff's attorney, signed by a non-resident attorney who was not admitted to practice law in the court where the cause was pending, purporting to appear for the defendant to the action, will not constitute a legal appearance so as to confer jurisdiction, and such proceeding was without jurisdiction and void.   *p. 545.*

SAME.—*Action for Appointment of Receiver.—When Not Authorized. —Statute Construed.*—Receivers are appointed under the provisions of section 1236, Burns' R. S. 1894 (section 1222, R, S. 1881), in cases where there is an action already pending between the parties. The

The State *v.* The Union National Bank of Muncie, Indiana, *et al.*

appointment of a receiver for an individual at the instance of a creditor, not in an auxiliary proceeding but upon a complaint in which the appointment is the sole relief sought, is not authorized either by statute or by common law.  *p. 550.*

SAME.—*Appointment of Receiver.—Jurisdiction of Property.*—If the appointment of a receiver to take possession of the property of an individual upon the complaint of the holder of a chattel mortgage were proper, such appointment could only be for the property covered by the mortgage, and could not include other property. *p. 550.*

From the Delaware Circuit Court. *Reversed.*

*W. A. Ketcham,* Attorney-General, *C. A. Korbly* and *W. H. Watson,* for appellant.

*Ryan & Thompson,* for appellees.

HOWARD, J.—In May, 1896, and for a long time previous thereto, the appellee, Alexander G. Patton, was a resident of Columbus, in the state of Ohio, and was engaged in the business of manufacturing, under the name and style of the Alexander G. Patton Manufacturing Company.  He had one factory at Columbus, Ohio, one at Muncie, Indiana, and one within the Indiana Prison South, at Jeffersonville.

Prior to Saturday, May 16, 1896, the State of Indiana had a suit pending in the Floyd Circuit Court against said appellee, and on said day there was a finding by said court in favor of the State in the sum of $28,242.62.  Judgment was entered on this finding on May 19, and execution thereon issued on May 20, which execution came into the hands of the sheriff of Delaware county on May 21, 1896.

On Sunday, May 17, 1896, the appellee, Patton, at Columbus, Ohio, learned of the finding against him in the Floyd Circuit Court, and also that judgment had not as yet been rendered upon the finding.  Early Monday morning chattel mortgages on the property at Muncie and Jeffersonville were prepared and executed by Patton.  Those upon the Muncie property

were at once sent on to that city by Wilden E. Joseph and L. L. Rankin, bookkeeper and attorney respectively for Patton, while Patton himself went to Jeffersonville.

The Union National Bank of Muncie, one of the appellees, held four promissory notes against Patton, and it was to secure this indebtedness that one of the chattel mortgages was intended. On the advice of counsel, renewal notes were made out for three of the old notes and the time extended. The remaining note was already sufficiently secured, and the bank preferred not to include that in the new notes to be secured by the mortgage. The bank had not expected to receive any mortgage as security for its indebtedness but, after learning the situation, accepted the mortgage and then believed its debt secure.

Afterwards the cashier of the bank was called up and informed that it was thought better that a receiver should be appointed for the Patton property, and that the bank should make the application. Thereupon Ryan & Thompson, attorneys, who acted in relation to the matter of the renewal notes and chattel mortgage, were directed by the bank to go ahead and procure the appointment of a receiver for Alexander G. Patton.

The complaint for a receivership was then, on said 18th day of May, 1896, prepared and filed by said attorneys, the material parts of said complaint being as follows:

"STATE OF INDIANA, } ss.
COUNTY OF DELAWARE. }

"UNION NATIONAL BANK OF MUNCIE
        *v.*
    ALEXANDER G. PATTON.

"The plaintiff complains of the defendant, doing

business under the name and style of Alexander G. Patton Manufacturing Company, and says; said defendant, on the 18th day of May, 1896, by the name of Alexander G. Patton, executed and delivered to said plaintiff his certain chattel mortgage on the following personal property, situate and located in Delaware county, Indiana, to-wit: (describing the property) to secure the payment of three notes of the date of May 18, 1896, executed by said defendant by the name of Alexander G. Patton, and payable to the order of the Union National Bank of Muncie, Indiana, plaintiff; one of which said notes is for the sum of $214.00, due June 17, 1896, with eight per cent. interest from date; one for $1,410.48, due July 17, 1896, with interest at 8 per cent. from maturity; and one for $1,513.00, due October 18, 1896, with 8 per cent. interest after maturity; all providing for the payment of attorney's fees, and payable without any relief from valuation and appraisement laws, a copy of which is filed herewith, marked "B," and made a part hereof. And which said notes are renewals and similar notes for similar and the same amounts.

"Plaintiff avers that said indebtedness is for loans of money from said plaintiff, borrowed for and used in the operation of the business of said company.

"The plaintiff avers that in the taking of said mortgage security aforesaid, plaintiff learned that there already existed a mortgage in full, which by its terms covered some parts and portions of the above mortgaged property, and that the property herein described as covered by the mortgage is inadequate to and wholly insufficient to secure the payment of said plaintiff's debts.

"That on this day, for the first time, plaintiff has learned said defendant is in imminent danger of insolvency; and plaintiff believes, from information se-

cured by it this day, said defendant is insolvent and unable to pay his indebtedness.

"The plaintiff is informed that the defendant is indebted, in the sum of fifty or sixty thousand dollars, to a large number of creditors in various amounts, and is on the verge of being sued in numerous cases for parts of said sum, and writs will be levied, and much of said property will be wasted and dissipated.

"And plaintiff avers that it has just learned that the State of Indiana has recovered a judgment of some $28,000.00 in the Floyd Circuit Court against said defendant, and an execution may be expected to come into the hands of the sheriff of Delaware county whereby all the property of said defendant, not already covered by liens, will be taken, and other creditors will be deprived of any funds from which any parts of their debts can be collected.

"That plaintiff is informed that said defendant has other personal property than such as is included in said mortgage, which plaintiff could secure by the aid of the power of this court by the appointment of a receiver herein. The plaintiff is informed that a receiver either has been or will be appointed in the State of Ohio in suits pending against said defendant, to take possession of such property of defendant as may be found in said State. And the plaintiff avers that if the property covered by said mortgage should be taken by said execution from the said Floyd Circuit Court, it will result in great damage and detriment to the security of plaintiff's claim, and is in danger of being removed and materially injured.

"Wherefore plaintiff prays the court for the appointment of a receiver or receivers to take charge of the property of defendant and of the property covered by and included in said mortgage, to hold and protect the said mortgaged property for plaintiff, and to

sell and otherwise dispose of all the property of the defendant for the benefit of his, said defendant's, creditors and this plaintiff, and to do and perform all the duties incident to such receivership.

"Ryan & Thompson, Attorneys for Plaintiff."

"Wilden E. Joseph, being first duly sworn, upon his oath says that he makes this affidavit for and in behalf of the plaintiff, and upon his said oath he further says that the matters and things in the above and foregoing complaint are true and correct.

"Wilden E. Joseph."

"Subscribed and sworn to before me this 18th day of May, 1896.           "John E. Reed, Clerk."

Ryan & Thompson prepared an answer to this complaint, which was signed by the said L. L. Rankin, and is as follows:

"State of Indiana, } ss.
County of Delaware. }

"Union National Bank of Muncie, Ind. )
                    *v.*                              *   )
       Alexander G. Patton.                    )

"Comes Alexander G. Patton, defendant in the above entitled cause, and admits and confesses that the facts set forth in the complaint in this cause are true, and further says not.

                    Alexander G. Patton,
          By Rankin & Rector, his attorneys."

Mr. Ryan, of the firm of Ryan & Thompson, filed this answer with the complaint in the Delaware Circuit Court; and thereupon, on said 18th day of May, 1896, the court "orders that a receiver be appointed as prayed for, and that John C. Johnson and Wilden E. Joseph be and they are hereby appointed as such receivers, to take charge and possession of all the

books, papers, property, and assets of every kind and description owned and possessed by the defendant, and apply the same, under the order and direction of the court, to the payment and liquidation of the debts of the defendant.

"And it is further ordered that said receivers be authorized and directed to, in their own name as such receivers, sue for and recover any and all claims and demands in law or in equity due the defendant, and take into their possession such real estate and personal property of said defendant as shall be in the State of Indiana, and title and right of possession thereto is vested in such receivers hereby, and such receivers to bring and maintain all suits necessary in relation to said trust.

"It is further ordered that John C. Johnson and Wilden E. Joseph execute their undertakings to John E. Reed, the clerk of this court, for the faithful performance of their duties as such receivers, each in the sum of $65,000, and now said John C. Johnson tenders his said undertaking to the clerk of this court, with Abbott L. Johnson as surety thereon, which is approved by the court and said undertaking accepted and approved in open court, and in these words (H. I.); and now comes Wilden E. Joseph and tenders his said undertaking to the clerk of this court, with Edward Alcott, the Union National Bank of Muncie, Edward Alcott, cashier, and William Abbott as sureties thereon, which is approved by the court, and said undertaking accepted and approved in open court, and in these words (H. I.); and now comes John C. Johnson and Wilden E. Joseph, and each file their oath of office herein, which is in these words (H. I.). And day is given."

It was afterwards conceded that Wilden E. Joseph was an interested person, and his appointment unau-

thorized, by the provisions of section 1237, R. S. 1894 (section 1223, R. S. 1881), and he was accordingly removed; but the receivership itself, and John C. Johnson as receiver, were continued.

On May 23, 1896, the State of Indiana, having recovered the judgment referred to in the complaint for the receivership, appeared by the Attorney-General in the Delaware Circuit Court, and asked leave to be permitted to intervene and move to set aside the order to appoint a receiver, and to dismiss the proceedings; which leave was granted on proper showing made, and thereupon the State filed its intervening petition to set aside the order appointing the receiver, and to dismiss the proceedings.

On June 2, 1896, the evidence was heard, and the motion of the State was taken under advisement; and on June 8, 1896, the motion and petition to set aside the receivership, cancel the order of appointment, and dismiss the proceedings, was denied. A motion for a new trial was also filed and overruled.

It is provided in section 1245, R. S. 1894 (section 1231, R. S. 1881), that in all cases in which a receiver is appointed or refused, the party aggrieved may, within ten days thereafter, appeal from the decision of the court to the Supreme Court, without awaiting the final determination of the case. We think the appeal of the State was taken in substantial compliance with the provisions of this statute. On being permitted to intervene, the State first sought relief in the court below, by asking for the setting aside of the order of appointment; and then excepted to the adverse ruling of the court on its motion. This was the first legal opportunity the State had to object and except to the action of the court, and to deny the right to appeal from that ruling of the court would be, in effect, to deny any appeal. The appeal is, practically, from the

action of the court in the appointment of a receiver. See *Wabash R. R. Co.* v. *Dykeman*, 133 Ind. 56, 63. See also *Voorhees* v. *Indianapolis Car, etc., Co.*, 140 Ind. 220.

The first objection made to the validity of the appointment of the receiver is that the court had no jurisdiction of the person of the defendant, Alexander G. Patton, for the reasons, (a) that no summons had been issued or publication made against said defendant; (b) that there was no appearance in person by him; and (c) that the attempted appearance for him by a non-resident attorney, not admitted to practice in the court below, could not constitute a legal appearance, so as to confer jurisdiction. Section 1244, R. S. 1894 (section 1230, R. S. 1881).

It is provided in section 976, R. S. 1894 (section 964, R. S. 1881), that "Any court may permit an attorney who is not a resident of this State to practice law therein, during any term of such court, upon his taking an oath for the faithful discharge of his duties."

It appears that at the time the answer was filed in the receivership case, Mr. L. L. Rankin, who signed to said answer the name of "Alexander G. Patton, by Rankin & Rector, his attorneys," had not been admitted to practice in the Delaware Circuit Court. We do not find it necessary, however, to consider the question so raised; for a more serious objection is, that, whether Mr. Rankin had or had not a right to appear for Mr. Patton, it is not shown that he did in fact appear for him. The evidence, without objection or exception, discloses that while Mr. Rankin signed the name of the defendant to the answer, yet that the answer was written by Mr. Ryan, one of the attorneys for the plaintiff, and further, that the answer was filed in court by Mr. Ryan.

The State *v.* The Union National Bank of Muncie, Indiana, *et al.*

In *Pressley* v. *Harrison*, 102 Ind. 14, which was a case in which Alfred Harrison brought suit against his partner, John C. S. Harrison, it appeared, as in this case, that no process was issued upon the complaint, and that the defendant did not appear, either in person, or by attorney, but that Alfred Harrison filed with his complaint a paper purporting to have been signed by John C. S. Harrison and to be an answer to the complaint. This court held that no appearance by the defendant was thus shown. "It is impossible," said Judge Mitchell, speaking for the court in that case, "to hold that signing and delivering to the plaintiff in the case the several papers above set out, and the presentation of them by him to the judge, constituted an appearance by the defendant, either to the action or to the proceedings before the judge. * * * One party to an adversary proceeding cannot do anything, nor can he be authorized to do anything by the other, which can give the court or judge jurisdiction over him except as the statute has enacted. As the statute does not authorize, and public policy forbids, one party to appear for the other, it must be held that where it appears, as here, that the only jurisdiction which the court or judge had over the defendant was such as was acquired through the agency of the plaintiff in appearing for him, its proceeding was without jurisdiction and void."

The case at bar is much weaker than the case of *Pressley* v. *Harrison, supra.* Here the paper purporting to be an answer was not signed by the defendant himself, but by a stranger to the court, who professed to be an attorney of the defendant, and resident in the state of Ohio. And not only was there no appearance in court by the defendant in person, but even the individual who assumed to act for him did not appear.

In the former case, the only appearance for the de-

fendant was by the plaintiff; in this case the only appearance for the defendant was by the attorney for the plaintiff.

In *Pressley* v. *Lamb*, 105 Ind. 171, it was held that an appearance by defendant in person and the signing and filing of an answer by him, would be such an appearance as would give the court or judge jurisdiction for the appointment of a receiver. In the case before us, it is not claimed that there was any personal appearance by the defendant; neither was there such appearance by anyone for him, other than the plaintiff's attorney.

It is also contended that the court had no jurisdiction of the subject-matter of the receivership, for the reason that there was no cause pending between the parties, and the complaint was for the appointment of a receiver for the property of an individual and not of a corporation.

It was said in *Bufkin* v. *Boyce*, 104 Ind. 53: "Whether a complaint may in any case be maintained when no other facts are stated upon which relief is asked, we need not decide in this case. Without doubt, the appointment of a receiver may be part of the relief asked in a complaint, in actions of the class in which receivers may be appointed. *Newell* v. *Schnull*, 73 Ind. 241. It may, however, admit of much question whether this can be the sole purpose of an action. In the case of *Hottenstein* v. *Conrad*, 9 Kan. 435, it was said: 'The appointment of a receiver is a provisional remedy. It is an auxiliary proceeding. It is not the ultimate end or object of a suit.' In *Chicago, etc., Co.* v. *U. S. Petroleum Co.*, 57 Pa. St. 83, Agnew, J., said: 'The appointment of a receiver is the exercise of a power in aid of a proceeding in equity, and is the subject of a sound discretion.' *Pressley* v. *Harrison, supra;* High Receivers, section 6."

In Beach Receivers, section 51, it is said: "That courts have no inherent power to appoint receivers except as an incident to a pending action, save in cases of idiots, lunatics and infants."

So, also, in High Receivers, section 17: "Ordinarily, unless perhaps in the case of infants or lunatics, a suit must be actually pending to justify a court of equity in appointing a receiver."

And in section 83, of the work last cited, it is said: "The usual practice, both in England and America, is to appoint receivers only upon bills filed for that purpose, and as a general rule the courts will not grant the relief merely upon petition, when no cause is actually pending and no bill filed to give the court jurisdiction, unless in very special cases of emergency." See also 20 Am. and Eng. Ency. of Law, 17, 24, 30, 87.

In the case before us, there was no action pending between the parties. The debt of the defendant to the plaintiff was not yet due; and no proceeding whatever had been instituted for its collection. Unless, therefore, our statute gives some authority specially applicable to this case, the court could have no jurisdiction to appoint a receiver for the defendant's property.

Receivers are appointed under provisions of section 1236, R. S. 1894 (section 1222, R. S. 1881), in certain cases therein named. In all the cases named, except, perhaps, the fifth and seventh, it is plainly provided that there shall already be an action pending between the parties, in which action the receiver may be appointed as auxiliary to or in aid of the principal action. In the fifth case named it would appear that a receiver may be appointed to take charge of the property of an insolvent or otherwise disabled corporation. And it was under this fifth clause that the two cases upon which appellee chiefly relies were

brought, namely: *The First Nat. Bank of Mauch Chunk* v. *The U. S. Encaustic Tile Co.*, 105 Ind. 227, and *The Supreme Sitting, etc.*, v. *Baker,* 134 Ind. 293 (20 L. R. A. 210).

But even in the two cases cited, it is doubtful whether the appointment of a receiver was not merely in aid of the main object of the suits, namely an accounting by the officers and the proper application of the funds of the corporation. In the later case it is said, by Olds, J.: "As a rule, if not universally, the appointment of a receiver is ancillary to the main cause pending, as in case of the foreclosure of a mortgage, an action by a creditor against an insolvent corporation in which he asks judgment for his claim, the dissolution of a partnership or of a corporation, and many like cases." And it was further said in that case, referring to the case of *First Nat. Bank, etc.,* v. *U. S. Encaustic Tile Co., supra:* "We do not find it necessary to give the statute so broad a construction as given in this case, that a receiver may be appointed under the statute when the sole object sought is to take the property from the hands of the officers. In the case at bar, the object of the proceedings, as we hold, is to secure the accounting of the officers, the application of the funds to the proper objects of the corporation, and the office of a receiver is the means or force sought to aid in accomplishing this object."

But, even granting that, under our statute, where a case is not pending, a receiver may yet be appointed when a corporation has been dissolved, or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights; still, that forms no justification for the appointment of a receiver for the property of an individual, as in the case before us. A corporation is a mere creature of the law, looking to its

franchise for the terms of its existence and of its conduct; and if this franchise be forfeited or in danger of forfeiture there is good reason why the law should at once take possession of the property of its failing creature and administer such property for the benefit of those entitled to it. But in the case of a natural person there remains an owner capable of keeping and using his property; and this property should not be taken from him, except by an action duly brought for that purpose. Before judgment is obtained it may be necessary, in certain cases, by notice of *lis pendens*, by attachment, by restraining order, or otherwise, to prevent the debtor from disposing of his property before the termination of the suit; but the property should not be taken from him until a lien has first been acquired by judgment or otherwise; or at least until an action has been brought for the purpose of securing such lien. Unless, possibly, in cases provided for by the statute, the appointment of a receiver can only be made in aid of the main action; although such appointment may be a part of the relief sought by the complaint. Here it was the sole relief sought, no action being pending between the parties.

Finally, even if, in any case, it could be lawful to appoint a receiver to take possession of the defendant's property, such appointment could only be for the property covered by the lien of plaintiff's mortgage. In this case, the court attempted to put the receiver in possession of all of the property of the defendant, wherever found in the State, whether the plaintiff had any lien upon or title to it or not.

As said in *Steele* v. *Aspy, Admr.,* 128 Ind. 367, "To authorize the interposition of the court by the appointment of a receiver, it was essential that the appellee should show either a clear legal right in himself to the property in controversy, or that he had some lien upon,

or property-right in it, or that it constituted a special fund out of which he was entitled to satisfaction of his demand. It was essential, to authorize the exercise of such jurisdiction, for the appellee to show that he had a present, existing interest in the property. High Receivers, sections 11 and 12; Beach Receivers, section 5; *Smith* v. *Wells*, 20 How. Prac. Rep. 158." See further, High Receivers, sections 406, 407, 755; *State* v. *Ross*, 122 Mo. 435 (23 L. R. A. 534); *Whitney* v. *Bank*, 71 Miss. 1009 (23 L. R. A. 531).

In the case before us, the plaintiff had no judgment or other general lien against the defendant's property. His only lien was that of his chattel mortgage; and without a suit to foreclose that mortgage he had no right to a receiver even for the property covered by that mortgage. Still less was there a right to a receiver for property not covered by plaintiff's chattel mortgage. The rights of judgment creditors could not thus be cut out by one who had no judgment or other lien upon the defendant's property.

From any point of view, therefore, it must be apparent that the court had no jurisdiction to appoint a receiver in this case.

The judgment is reversed, with instructions to sustain the motion of the appellant to set aside the order appointing receivers, and to discharge the receivership and dismiss the action.