NEVARES BROTHERS, Petitioners, *v.* DISTRICT COURT OF SAN JUAN, Respondent.

No. 555.  Argued February 14, 1927.—Decided March 7, 1927.

*Acuña, Janer* and *H. G. Molina* for the petitioners.  *Jacinto Texidor* for the plaintiff in the main action.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

This is a certiorari proceeding brought for the review of an order of the court below appointing a receiver in an action of unlawful detainer.

Plaintiffs Francisco and Francisca Rita Nevares López brought an action of unlawful detainer at sufferance and prayed for the eviction of petitioners Nevares Brothers from a rural property belonging to the plaintiffs.  The lower court sustained the complaint, the defendants appealed and the plaintiffs, relying on subdivisions 1 and 3 of section 182 of the Code of Civil Procedure, filed in the lower court a motion which, in its pertinent part, reads as follows:

"Motion for the appointment of a receiver.—Plaintiffs herein appear by their counsel and respectfully state: I. That they are the owners of the following property . . . . .  II. That said property is planted to sugar cane, of which sixty-one acres are growing a first crop and twenty acres are growing a second crop.  III. That petitioners herein in their capacity of owners of the said property brought and prosecuted in this district court against Nevares Brothers this civil action No. 1983 which was decided on the 27th of September, 1926, by Judge Pablo Berga in a judgment sustaining the complaint in the action of unlawful detainer, ordering that Nevares Brothers be ousted from the property, placing the same at the disposal of plaintiffs; that defendants have appealed therefrom to the Supreme Court of Porto Rico and that pending the appeal they continue in possession of the said property.  IV. That Nevares Broth-

ers, defendant partnership in this action, are preparing for the cutting and harvesting of the cane planted on the aforesaid property, which planting was done by said partnership without any lease contract with the owners of the property. Petitioners allege that such cutting and harvesting of the cane would cause serious injury if done by Nevares Brothers who would keep the returns therefrom, thus depriving plaintiffs of such returns from their property. V. That during the pendency of the said appeal petitioners are of the opinion that as a protection of any claim on their part to the value of the cane as against Nevares Brothers it is proper to appoint a receiver to manage said crop under the court's orders in conformity with subdivisions 1 and 3 of section 182 of the Code of Civil Procedure.''

The court granted the motion and ordered the appointment of a receiver by a resolution of January 13, 1927.

In connection with the sufficiency that might attach to the arguments contained in the motion it was stated by the lower court, among other findings of fact and conclusions of law, as follows:

''It appears from the documentary evidence that by deed executed before notary Pedro González García on August 21, 1914, José Nevares Llandrón, as guardian of the minors Francisco Toribio and Francisca Petrona Nevares López and under authorization granted by the District Court of San Juan on July 31, 1914, leased to Juan C. Santiago Angulo the property which is the subject of this action of unlawful detainer, with the exception of an acre which is described, for 6 years from the 1st of July, 1914, expiring on the same day and month of 1920 for the sum of $50 monthly; that by deed executed before notary Eduardo Acuña Aybar on September 4, 1914, was constituted the partnership Nevares Brothers, Ltd., as a civil partnership for agricultural and industrial purposes by its partners Mario, Oscar and José Nevares López, for eight years from the date of its constitution until September 4, 1922; that by deed executed before notary Francisco Soto Gras on January 8, 1915, was constituted the private agricultural partnership of Laguna & Santiago by its partners José Laguna Chavalier and Juan J. Santiago Angulo for 5 years and 6 months, from January 1, 1915, to June 30, 1920, for the exploitation of the property leased by said Juan C. Santiago Angulo belonging to plaintiff and the planting of the same to sugar

cane; that by deed executed before notary Eduardo Acuña Aybar on June 21, 1918, the agricultural partnership of Laguna & Santiago assigned to Mario Nevares the lease on the property of plaintiffs and the ratoons existing thereon; and that by deed executed before notary Antonio Ayuso Valdivieso on July 2, 1926, plaintiffs herein requested the civil partnership of Nevares Brothers through its managing partner Jorge Nevares to make immediate delivery of the property, positively opposing their further occupation of the same in any manner, whether as tenants at will or otherwise, and should there be any legal lease they also expressly opposed any implied renewal.

"The testimonial evidence has shown that plaintiffs, while they were minors under the guardianship of José Nevares Landrón, lived in the company of Rudesinda del Valle; that the $80 which she received from Nevares Brothers was spent for the support and· education of the minors; that the amount of different checks issued to the order of Francisco Nevares Landrón and cashed by him used to be also handed to Rudesinda del Valle for that purpose; that the lease to Juan C. Santiago Angulo executed with the authorization of the court and conveyed by him to Laguna & Santiago and afterwards to Mario Nevares or Nevares Brothers, Ltd., expired on June 30, 1920, but that Nevares Brothers, Ltd., continued in the possession and enjoyment of the property, and that the guardian, about a month after the expiration of the lease, demanded from them the payment of the $80 monthly as rent plus the payment of the taxes on the property, to which Nevares Brothers, Ltd., agreed, beginning the payment of said $80 per month on July 1, 1920; that after the constitution of the new partnership of Nevares Brothers, on the death of Mario Nevares and by deed executed on September 2, 1922, the possession and enjoyment of the property was conveyed to it without any objection on the part of the guardian who was the father of defendants, and the latter continued paying the monthly rent of $80, some of the checks being forwarded to Rudesinda del Valle by order of the guardian, but that he having died on September 25, 1925, said rent was then paid to Rudesinda del Valle or to Francisco Nevares López (plaintiff), indistinctly, as appears from the checks issued by Nevares Brothers in favor of the former and cashed by them, the amount thereof being spent for the benefit of the minors.

"Now was the contract of lease which expired on June 30, 1920, renewed, or was there an implied renewal thereof, from year to year, as alleged by defendants? This is the first point which we must consider.

"In this case the lease, according to the agreement of August 21, 1914, could be renewed tacitly even though plaintiffs were minors and the court had fixed the length thereof, though in no case could it exceed the time still left for the minors to become of age, in compliance with section 282 of the Civil Code. But here there was a modification of the original contract after its termination, with new conditions such as the payment of taxes and different rent which were accepted by Nevares Brothers, Ltd. (*Belaval et al.* v. *Fajardo Sugar Growers' Association,* 17 P.R.R. 268), and it is the opinion of this court that the above modification of the original contract extinguished or left without effect the implied renewal which had begun to run and established a new lease by the month. In order that there should be an implied renewal the stipulations of the renewal contract must be identical with those of the original contract, that is to say, they must contain the same requisites and circumstances with the only exception of the length of time which in rural properties extends up to the gathering of the year's crop, or of one crop, when more than one crop is necessary to gather the produce. In this connection see Manresa 623, where it is said: . . . . .

"And the guardian had authority to execute this new monthly lease at $80 per month, because it is not prohibited by section 282 of the Civil Code which establishes the cases where a guardian must have authorization from the proper district court in regard to minors under their care and their property. *Compañía Azucarera El Ejemplo* v. *Registrar,* 23 P.R.R. 262. Contracts of lease on real property executed by the guardian cannot exceed the time left for the minor to become of age, nor can the courts authorize them. Therefore, the monthly lease which in the present case was granted by the guardian to Nevares Brothers, Limited, in 1920 at the expiration of the lease authorized by the court, or his consent or acquiescence for the delivery of the property to Nevares Brothers and their possession and enjoyment thereof on the same conditions granted to Nevares Brothers, Limited, after the liquidation and dissolution of this partnership in 1922, could not be extended beyond the 16th of April, 1926, as to Francisco, and the 25th of May, 1926, as to Francisca Petronila Rita, on which dates the former became of age and the latter was legally emancipated and both began to act by themselves without any outside restriction.

"No contract exists between the partnership Nevares Brothers and Francisco and Francisca Petronila Rita Nevares López after the coming of age of the former and the legal emancipation of the latter,

but on the contrary they formally required Nevares Brothers, on July 2, 1926, through its managing partner Jorge Nevares, to deliver immediately the property to them and expressly refused that they occupy the same . . . . . But it is contended that plaintiffs are estopped from denying the existence of a lease because they accepted the rent without opposition or protest both during their minority as well as after Francisco became of age and Francisca was legally emancipated, respectively. Aside from the fact that the law prohibits that the length of a lease should exceed the time left for a minor to become of age, either through a contract or implied renewal, there is nothing to prevent plaintiffs from recovering their property, subject, of course, to the proper compensation in a proper case on account of crops on the property. It is true that Francisco Nevares López accepted and cashed on May 1, 1926, that is to say, 14 days after he had become of age, a check for $80 for the rent of April, 1926; but this single fact, under the circumstances of the case, does not imply a formal acknowledgment of the renewal as alleged by defendants, and still less could it prejudice the other plaintiff Francisca Petronila Rita Nevares López who was still a minor and was not emancipated until May 25, 1926, even though she used part of that money.

"As there is no extension in this case by implied renewal owing to the modification of the original contract, at least from the 1st of July, 1921, when the first extension expired, nor any contract with plaintiffs, the next point to be considered is whether plaintiffs shall be deprived of the possession of their property until after the sugar crop of 1927 because there are canes planted thereon ready to be cut in that grinding season. The answer to this is to be found in section 18 of Unlawful Detainer Act to the effect that 'the fact that the settler or tenant makes the claim for work performed, plants, or any other thing which cannot be removed from the property, shall not be an obstacle to his ejectment' and that it shall be proceeded to make a valuation thereof, 'the right being reserved to the defendant to bring an action before the proper court to recover the amount assessed, to which he thinks himself entitled.' "

As we are not now concerned with the merits of the action of unlawful detainer, it is not necessary to consider whether the occupation of the property by the defendants from year to year from July 1, 1920, was an extension or a new contract for the purpose of an implied renewal.

Be that as it may, it is a fact that on September 27, 1925, when plaintiffs' guardian died, defendants were in possession and enjoyment of the property under a contract of lease. And it was a case of a rural property that had been planted and was planted to cane.

As this is the season for the planting of cane in the so-called "long culture" method it can not be imagined that the cane could be ground during the grinding season beginning, as customary, at the beginning of each year and ending in June or July, that is to say, during the grinding season of 1926. In any case it must be inferred that the cane in the field at the time when the plaintiffs became of age in April and May, respectively, of 1926, whether in the case of a contract of lease really existing or in the case of a tenancy at will, had been planted and cultivated by the defendants. It seems important to state in the former case that the plaintiffs on July 2, 1926, gave notice to the defendants to deliver the property to them. There is no doubt that that notice was given (considering the legal capacity of plaintiffs to contract), not because it was necessary to do so as a condition precedent to the establishment of an action in a tenancy at will, a requisite that was omitted in the present law of unlawful detainer and thus upheld in the jurisprudence, but because plaintiffs wished to guard themselves against the legal extension of the lease by implied renewal. That is the only explanation of such a step. From the same standpoint as presented by the plaintiffs, carrying the argument to its own ground, the right of the defendants to the cane unsevered at the time of the notice can not be more evident.

Within the rules established by the authorities in general the crops unsevered at the end of the lease, unless otherwise stipulated, belong to the tenant. In 8 R.C.L. 362, the jurisprudence is thus summed up:

"As between a landlord and tenant the annual crops raised on

the leased land during the tenancy are no part of the freehold, but are the property of the tenant in the absence of any stipulation affecting it. While this rule is absolute as to crops severed or matured during the tenancy, it is otherwise as to crops which mature after the termination of the lease. These are designated as away going crops, and whether a tenant has the right to re-enter and take them depends to a great extent on the character of the lease. The common law rule is that where the renting is for a time certain the tenant is not entitled to such crops, because, if it is certain at the time when he sows, how long the tenancy will continue, and it is plain that before it ceases he cannot reap that which he may sow, then it is his own folly if he sows. There is an exception to this rule in the case of gardeners and nurserymen, who for the benefit of trade, after the expiration of their lease, are permitted to remove trees, shrubs, etc., planted by them with an express view to their sale. It is possible that crops which have matured may be considered 'growing crops' within the meaning of some statutes and for some purposes, but this cannot be held as between the landlord and tenant on the expiration of the lease. On the contrary where a crop has fully matured at the date of the termination of a lease, the tenant has the right to the crop although it is still unsevered; and, on the principle that after the termination of a lease the tenant has a reasonable time in which to take away his personal effects, he has a reasonable time in which to remove a matured crop, and even though he fails to remove the crop the title to it does not, by reason of such failure, vest in the landlord. A tenant holding by a tenure which is uncertain as to the time at which it will cease, is entitled to take off, after it has ceased, a crop that he planted in the due course of husbandry; and for that purpose he is entitled to re-enter and harvest the crop. Accordingly, if one buy land knowing that the possessor is a tenant at will of the seller, he cannot defeat such tenant's right to his crops. The principle of these cases is, that where a person is in possession of land under a title that may be determined by an uncertain event not within his control, it is essential to the interests of agriculture that such a determination of his lease shall not prevent him from reaping what he has sown. The common law rule stated above that where the termination of a lease is certain the tenant is not entitled to the away going crop, may be modified by an express agreement between the parties to the lease so that the tenant will have the right to the crops growing on the demised premises and ripening after the termination of the lease; and in some jurisdictions this rule of common law has been

changed by custom, according to which a tenant has the right, after the expiration of his term, to enter on the demised premises, and cut and carry away crops which were planted by him and which matured after the expiration of the lease. This custom apparently arose out of the necessity of the case and in order to protect a tenant and to save to him a crop planted by him in the fall which would not mature until after the expiration of his lease in the spring.''

Even in the case of a tenancy at will the rules do not vary:

''Likewise, where a tenancy at will is determined by the landlord, the tenant will be entitled to crops which he has sown, and several times the courts have held tenants at will entitled to hay and grass, without noticing any distinction between such perennial crops and annual crops.'' 8 R.C.L. 364.

These principles which we might call of universal justice, founded undoubtedly on the axiom that no person shall enrich himself at the cost and to the detriment of another, are in accordance with our historical and local jurisprudence on the matter. The difference, if any, is a mere matter of procedure. With the exception of the provisions of section 1474 of the Civil Code where notwithstanding the unlawful detainer, when proper, the tenant of the former owner may demand that he be allowed to gather the crop of the current agricultural year, in all other cases the matter is left to be determined in an ordinary action, apart from the proceeding of unlawful detainer, as may be seen from section 18 of the Unlawful Detainer Act of March 9, 1905:

''Section 18. The fact that the settler or tenant makes claim for work performed, plants, or any other thing which can not be removed from the property, shall not be an obstacle to his ejectment. In such case the marshal shall proceed to make the ejectment without delay, and after it has been effected, he shall, at the request of the interested party, proceed to make a valuation of the property at the cost of the claimant, after the appointment of an expert to be designated by the interested parties, by mutual consent; and in case of a disagreement, three experts shall be appointed, one by each of the parties and the third by the marshal. After the valuation has

been made and the result thereof has been received by the marshal in writing signed by the experts, the interested and said official, it shall be returned to the court with the order of execution; the right being reserved to the defendant to bring an action before the proper court to recover the amount assessed, to which he thinks himself entitled."

It would not be an easy task to find in the legislation of some states of the Union a similar legal provision in unlawful detainer proceedings, but the intention of the Porto Rican legislators was to eliminate every controversy that might hinder the prosecution of an action of unlawful detainer because of works, plants, or any other thing that can not be separated from the property and that is claimed by the tenant. The action is confined to the mere possession or tenancy of the property between plaintiffs and defendant. The good or bad faith of the possessor in connection with the fruits is not discussed or determined. That is why nothing is alleged in the complaint in the present case regarding the fruits, nor is there anything decided or awarded in this respect. So that the appointment of a receiver within the action of unlawful detainer has been converted into a proceeding instituted for that purpose and not as a purely auxiliary relief, according to its own general nature. This is a jurisdictional requisite. In the case of *Vila* v. *Grand Island E. L. I. & C. S. Co.*, 63 L.R.A. 796, in a proceeding whose only object was the appointment of a receiver, the court said:

" 'It is not the office of a court of equity to appoint receivers as a mode of granting ultimate relief. They are appointed as a measure ancillary to the enforcement of some recognized equitable right.' Baldwin, J. in *Barber* v. *International Co.*, 73 Conn. 593, 48 Atl. 758. 'Unless, possibly, in cases provided for by the statute, the appointment of a receiver can only be made in aid of the main action, although such appointment may be a part of the relief sought by the complaint.' *State* v. *Union Nat. Bank*, 145 Ind. 550, 57 Am. St. Rep. 209, 44 N.E. 585. 'The appointment is not the ultimate end and object of the suit, but is merely a provisional remedy or auxiliary proceeding.' *State ex rel. Meriam* v. *Ross*, 122 Mo. 456, 23 L.R.A. 534, 25 S.W. 947.''

Section 182 of the Code of Civil Procedure, on the other hand, does not authorize courts to appoint a receiver in a proceeding of unlawful detainer. The appointment of a receiver pending the appeal from a judgment would be tantamount to the execution of a judgment appealed from, because it would deprive the defendant of the handling and management of the crops and of the property, dispossessing him thereof. Said section is a literal copy of section 564 of the Code of Civil Procedure of California, with the exception of subdivision 2 which refers to mortgage proceedings. Nothing was included therein in regard to unlawful detainer proceedings. Our Code of Civil Procedure was approved March 1, 1904, and afterwards, in May 3, 1919, said section 564 was amended in California by inserting a subdivision designated with the number 6 and which reads as follows:

"In action of unlawful detainer in those cases in which the superior court has exclusive original jurisdiction."

It is useless to say that this amendment plainly shows that section 564 as originally worded and copied in our codes did not give jurisdiction to courts for the appointment of receivers in cases of unlawful detainer. It has not been amended in Porto Rico and the courts do not have jurisdiction in such cases.

From the various points of view that this question has been considered by us we come to the conclusion that the lower court lacked jurisdiction to make the order of January 13, 1927, and the same must be set aside and declared null and void.