## MERCHANTS' AND MANUFACTURERS' NATIONAL BANK OF DETROIT, RELATOR v. KENT CIRCUIT JUDGE.

*Final orders—Injunction of replevin suit—Receivers—Creation of trust by foreclosure of chattel mortgage.*

An order refusing to enjoin a replevin suit, is not final and appealable.

An order enjoining a replevin suit for property to which plaintiff claims title, is in the nature of a final order and is appealable.

An order appointing a receiver when no suit is pending concerning the property of which he is put in charge, is void.

The law-partner of the solicitor for a complainant in foreclosure, cannot, even by consent, be made receiver in the suit.

A receiver cannot employ a solicitor as his own counsel, unless with the consent of all parties concerned in the results of the receivership, which may include persons not parties to the suit.

The power of a court of equity by appointing a receiver to draw to itself the jurisdiction to try disputed titles, is exceptional, and must rest on facts that render common law remedies inadequate or improper in the particular instance.

Where mortgaged property is in foreclosure in a suit in which a receiver had been appointed, a third person who has a right of action in replevin for it, cannot properly be restricted to an action of trover, in which he could only recover the net proceeds after deducting costs of the receivership which he did not desire or assent to, and which would thus compel him to submit to the management and disposition of the property as the receiver might see fit.

A chattel mortgage cannot properly be given under an arrangement by which it is to fall due at once and be foreclosed, and the property is to be placed in charge of a receiver who is to manage it to the exclusion of other creditors.  Such a course would amount to creating, by means of the mortgage and a court order, a trust which would be invalid if made by an assignment.

MANDAMUS.   Submitted April 13.   Decided April 14.

*Norris & Uhl* for relator.   An order enjoining the execution of a writ of replevin and authorizing a receiver to dispose of the property described in the writ, is appealable, *Arnold v. Bright* 41 Mich. 207; *McCombs v. Merryhew.* 40 Mich. 721; *Taylor v. Sweet* 40 Mich. 736; *Port Huron v. Jones* 33 Mich. 303; *Port Huron v. St. Clair Circuit Judge* 31 Mich. 456; *People v. Simonson* 10 Mich. 335; *Michigan Ins. Co. v. Whittemore* 12 Mich. 312.

*Jacob Ferris* and *M. T. Smiley* for respondent.

COOLEY, J.   The application for a mandamus in this case brings under review questions of the validity and propriety of the order appointing a receiver.

The bill was filed to foreclose a chattel mortgage. The mortgage was by Hibbard & Graff, merchant millers of Grand Rapids, to Philip M. Graff, and bore date March 17, 1880.   The purpose was to secure the mortgagee for having become accommodation endorser for the mortgagors on a large amount of commercial paper.   The mortgage covered "all the flour, wheat, corn, oats, bran and feed owned by the parties of the first part, and situated in the city of Grand Rapids, Michigan, whether on the track or in the mills or warehouses, or in the elevator at Berlin, Ottawa county, Michigan; all the barrels, sacks, bags, tools and office furniture and fixtures, including safes, situate in and about, and used in connection with their two mills, being three large teams and larries, two pairs of large sleighs and one light delivery wagon, and the blankets used with said teams.   Also the engine and boiler used in the Valley City Mills, and put in by Hibbard & Graff since their lease of the same, and the shafting and pulleys used by them in connecting the engine with the mill and machinery.   Also all the wheat, corn and oats which may be purchased by the parties of the first part and delivered to them in the city of Grand Rapids, either on the track, in store, or in their mills, and all flour, feed and bran manufactured by them while any portion of the debts secured by this mortgage remains unpaid."

The mortgage reserved to the mortgagors the privilege of making sales in the ordinary course of their business,

and provided that "in case of the non-payment of the said notes or any of them at maturity by the party of the first part or if the party of the second part shall at any time deem himself insecured, he   *   *   whether the party of the second part shall have paid anything on said notes or not, is hereby authorized to enter upon the premises of the party of the first part, or any place or places where the said goods and chattels or any part or portion thereof may be, and take possession thereof, and sell and dispose of the same at private sale or public auction,   *   *   *   whether any of such notes have matured or not, and apply the proceeds thereof to the payment of said notes as fast as they mature."

A bill to foreclose this mortgage was filed the day after its date. It was alleged therein that one of the notes, the payment of which was secured by the mortgage, was long past due, and that another became due March 17, 1880, and another March 18, the day the bill was filed, and both remain unpaid; and that by reason thereof the whole sum secured by the mortgage, amounting to $38,800, has become due and payable immediately; that by reason of disastrous speculations the mortgagors have become insolvent, and have transferred to complainant the mill property whereon they conducted their business; that the wheat and other unground grain described in the mortgage cannot be profitably sold and converted into money except after being ground; that to manufacture said grain into flour, and other proper products, will yield larger returns, and be more for the interest of all parties concerned, than to sell or dispose of the same in an unmanufactured state; that the total value of all the mortgaged property will not exceed $40,000, and if disposed of at forced or auction sale will not yield more than $30,000 or thereabouts. The bill prays for the appointment of a receiver, and nominates the law partner of the solicitor for complainant as a suitable person to be appointed.

No persons were made parties defendant to this bill except the mortgagors. Late in the evening of March 18th, and before the bill had been filed, it was presented to the circuit judge at his dwelling house, and an appli-

cation made for the appointment of a receiver as prayed. The mortgagors appeared at the same time, by a solicitor of the court, and consented to the appointment.    The circuit judge, apparently looking upon the case as an amicable proceeding in which all parties concerned were working in harmony to preserve and dispose of the property for the benefit of all, made the appointment prayed for.    The appointment purports to be one made in open court, but the court was not in session at the time, and the bill not being then filed, there was no cause pending. The order of appointment directed the receiver to proceed to manufacture the grain mortgaged into flour and other proper products, and to sell in the usual course of trade and on credit.

It soon appeared that the proceeding was far from being an amicable one, except so far as the mortgagors and mortgagee were concerned.    At the very time the mortgagee was having his bill for foreclosure prepared and obtaining his order for a receiver, other parties were suing out writs of replevin for some portions of the property.    One of these parties was William B. Ledyard, by virtue of whose writ the wheat in the Crescent Mills, previously operated by the mortgagors, was seized an hour or so before the order appointing a receiver was made.    Another was by Euphrasia Aldrich, who replevied a quantity of wheat at or about the time when the order was made.    Another was by the Merchants' & Manufacturers' Bank of Detroit.    The circuit court appears to have come to the conclusion that the writ of this plaintiff was not served until the receiver had become possessed of the property in dispute, which could not have been earlier than about 10 o'clock on the night of March 18th, that being the hour when his bond as receiver was filed.

On March 19, 1880, the receiver petitioned the circuit court in chancery for an order restraining the several plaintiffs in the replevin suits from proceeding further therein.    A hearing was had on this petition, and its

prayer was granted so far as the suit by the bank was concerned, and denied as to the other suits. The bank however was granted leave to bring an action of trover to recover the value of the property described in its writs. The receiver was by the same order required to deposit in bank the net proceeds of sales of the property made by him. Both the receiver and the bank appealed from this order.

I. The appeal of the receiver was from those parts of the order which refused an injunction against the Ledyard and Aldrich suits. The order in that regard was not a "final order," and was therefore not appealable under the statute. *Wing v. Warner* 2 Doug. (Mich.) 288; *Caswell v. Comstock* 6 Mich. 391; *Boinay v. Coats* 17 Mich. 411; *Spencer v. Stearns* 28 Mich. 463. These appeals must therefore be dismissed.

II. The order in so far as it enjoined the bank from interfering by suit with the possession of property to which the bank claimed title, inasmuch as it finally took from the bank a legal right, was in the nature of a final order and was appealable. *Lewis v. Campau* 14 Mich. 458; *Barry v. Briggs* 22 Mich. 201.

III. The order appointing a receiver was void, for the reason that it was made when there was no suit pending. It is perhaps fortunate for all parties interested that such was the fact, inasmuch as if it had been legally valid, the appointment, though of a person eminently fit for the position but for his relations to the litigation through his law partner, must necessarily at some time have been set aside, and the longer it should stand the greater must have been the probability of confusion in the rights of the parties growing out of his proceedings, and of unnecessary costs and expenses to be borne by some one or more of the claimants to the property.

In *Ex parte Pincke* 2 Meriv. 452, the Lord Chancellor refused to appoint the solicitor to the commission as receiver of a lunatic's estate, though it was stated that

no one else would accept the office. The ground of the refusal was that it might become the duty of the solicitor himself to call the receiver to account.

So in *Stone v. Wishart* 2 Madd. 63, where the parties united in a request that the next friend of infant complainants be appointed receiver, the Vice Chancellor said: "I cannot accede to this motion, although it is consented to. It is the duty of the next friend of these infants to watch the accounts and the conduct of the receiver, to be control over him. The two characters cannot be united; they are incompatible."

We cannot shut our eyes to the fact that the law partner of the solicitor is presumptively as much interested in the proceedings as the solicitor himself, and it would be peculiarly objectionable that he should act in a position requiring impartiality in a case like this, where the parties to the suit are manifestly acting in concert, and adversely to the interest of other persons who cannot watch their proceedings. The practical results would be that the receiver would supervise his own accounts. *Garland v. Garland* 2 Ves. Jr. 137. The practice in equity does not even permit the receiver to employ a solicitor in the case as his own counsel, lest it might disarm his vigilance in watching the receiver's proceedings. *Ryckman v. Parkins* 5 Paige 543; *Adams v. Woods* 8 Cal. 306. This rule may no doubt be departed from by consent of all parties concerned; but this must mean by consent of all parties concerned in the results of the receivership; and one not a party to the suit may be as much concerned in these as the persons who are parties. The present suit is an illustration.

IV. The order appealed from by the bank was improper in that it forbade a person not a party to the suit from testing in the customary common law method the title which is asserted to specific property, and in so doing stretched unnecessarily, improperly and oppressively, the power of the court of equity in abridgement of the jurisdiction of the court of law. There may be

cases in which it would be proper for a court of equity by means of a receivership to draw to itself the jurisdiction to try disputed titles to property; but the jurisdiction to do so is exceptional and must be supported by circumstances which render the common law remedies inadequate or for some reason unfit and unsuitable in the particular case. No such circumstances appear or are suggested here. It was proper and just that the bank be allowed to go on with the suit in replevin, if that seemed most for its interest, and improper and unjust that it should be restricted to a suit in trover, which would be in effect for net proceeds only after the costs of a receivership, which the bank did not desire or assent to, had been deducted. If the property belonged to the bank, the injustice of requiring the owner to submit to such management, manufacture and sale of it as another person might think expedient, and to recover the net proceeds only after the costs of a receivership in a suit between other parties had been wholly or in part deducted, would be too manifest to require more than mere mention.

V. It cannot escape attention that the whole scheme of giving a chattel mortgage which would be immediately due, filing a bill in equity upon it at once and obtaining the appointment of a receiver who should take possession of the property to the exclusion of other creditors and go on with the business as the mortgagors themselves might have done and as the order in this case contemplated, was an attempt by means of the machinery of the law to accomplish indirectly what, without calling in the aid of the court, could not be legally done at all. We do not enlarge upon this aspect of the case, as it is not necessary here; but it must be manifest that the parties were creating a trust by means of the mortgage and of a consent order which could not stand the test of the law if made by an assignment. It resembles very closely an attempt by circuitous methods to avoid a legal principle.

The order which is appealed from by the bank must be reversed with costs against the complainant in the suit.   What has been said will render unnecessary any award of the writ of mandamus.

The other Justices concurred.