WALTER K. F. VILA ET AL., APPELLEES, V. GRAND ISLAND
ELECTRIC LIGHT, ICE & COLD STORAGE COMPANY, IM-
PLEADED WITH REXFORD E. HULETT ET AL., INTER-
VENERS, APPELLANTS.*

FILED MARCH 18, 1903. No. 12,342.

1. **Receivership:** ANCILLARY REMEDY. A receivership is a purely an-
cillary remedy and can not be maintained in a proceeding in-
stituted solely for that purpose.

2. **Receiver:** CORPORATE PROPERTY: JURISDICTION. Unless expressly au-
thorized by statute, a court has no jurisdiction to appoint a re-
ceiver of corporate property upon grounds which would not be
sufficient were the owner a natural person.

3. ———: MORTGAGEE. A receiver can not be appointed at the in-
stance of a mere mortgagee for property not covered by the mort-
gage.

4. ———: JURISDICTION: NOTICE. Jurisdiction to appoint a receiver of
corporate property, can not be conferred· by the mere consent of
the corporation where neither equitable nor statutory grounds
exist and where other parties whose rights are affected have not
been notified; nor is a stockholder concluded by such an order.

APPEAL from the district court for Hall county: JOHN
R. THOMPSON, DISTRICT JUDGE. *Reversed.*

*Charles G. Ryan* and *Richard C. Glanville* (*Leo Cleary,*
on motion for rehearing), for appellants.

*William H. Thompson* and *Virgil O. Strickler, contra.*

LOBINGIER, C.

On December 6, 1900, appellees filed in the district court
for Hall county a petition making the Grand Island Elec-
tric Light, Ice & Cold Storage Company a defendant, al-
leging that it had, on June 18, previous, mortgaged its
plant and other property to appellee Vila for $15,000; that
$4,000 of this had been used for other purposes than
paying off a prior mortgage as agreed; "that said defend-

* Rehearing allowed. See opinion, p. 233, *post.*

ant is now and will be wholly unable to pay the interest or any part thereof to become due on its said mortgage indebtedness on January 1, 1901; that defendant is also wholly without ability or means to pay any part of its floating indebtedness amounting to about the sum of eighty-six hundred and sixty-two dollars ($8,662) and its creditors are threatening to attach the mortgaged property hereinbefore described"; that defendant had failed to keep its plant in repair as required by the mortgage; and that by the terms of the mortgage the noncompliance with its covenants entitled plaintiff to an appointment of a receiver. Another clause of the mortgage quoted in the petition authorizes such appointment "upon the commencement of suit to foreclose," and the petition contained the following prayer: "Wherefore the plaintiffs pray that a receiver be appointed for defendant and the said receiver be given authority to do each and all of the things mentioned in said mortgage, to wit: To take possession of all the defendant's property covered by said mortgage and to manage and operate the business and to collect its income and profits and to apply the same upon the expenses and charges for maintaining and operating said business and paying the obligations secured by plaintiffs' mortgage and for such other and further relief as to the court may seem meet and proper."

On the next day the following answer was filed on behalf of the defendant:

"Now comes the above named defendant and for answer to the plaintiff's petition admits the facts therein stated and consents to the appointment of a receiver in this action as prayed in the plaintiffs' petition."

On the same day a receiver was appointed to take charge of the "property, business and assets of the defendant" (part of which is enumerated), "and all other property of every kind or character, belonging to or pertaining to said defendant and its business." By the terms of this order the receiver is directed, *inter alia*, "to operate and carry on the business of the defendant." The next order ap-

pearing in the record is dated March 5, 1901, and recites "that it is for the best interest of the parties hereto, of the said trust and all persons interested therein that the business of the said defendant, the Grand Island Electric Light, Ice & Cold Storage Company be speedily closed and the affairs thereof wound up as soon as possible." In this order also the receiver is directed to notify all creditors of the defendant to file their claims. It does not appear in the record upon what this order is based or at whose instance it was obtained. On March 25, the several appellants filed individual petitions of intervention, alleging the recovery of judgments before a justice of the peace on claims for labor performed in defendant's behalf. The aggregate amount of these claims was about $700, and each petitioner prayed that his claim should be given preference, and alleged that the property in the hands of the receiver included about $9,000 worth of personalty which was not covered by plaintiffs' mortgage, and each prayed that he might share in the fund arising from the sale thereof. An order granting leave to intervene as prayed, was entered on the same day that these petitions were filed, and on the following day the receiver filed a report as to the condition of the business, in which he recommended a speedy sale of the entire property in his hands. Objections to this application to sell were filed by the interveners, and also by appellee Kinkel, a stockholder in the defendant corporation. These were overruled, and an order made requiring an inventory and appraisement of the property, in pursuance of which the appraisers fixed the valuation of the plant in the aggregate at $25,000. On May 6, a decree was rendered, in which demurrers to the several petitions of intervention were sustained, but the claims of the interveners, among others, were allowed, less the court costs of placing them in judgment. By this decree, the court also found that certain of the property in the receiver's hands was personalty and was not covered by plaintiff's mortgage, but it also found "that all of the property, goods and franchises, real, personal or mixed,

coming into the hands of the said receiver, save that which is herein specifically found to be personal property, is covered by the said plaintiff's mortgage." The decree directed a sale, subject to the mortgage, of all property covered thereby, and a separate sale of the remaining personalty, and on June 8 the entire property was sold to G. H. Payne, trustee, president of appellee Payne-Knox Company, for $2,800 for the mortgaged property and $150 for the balance. This is about one-third of the floating debt alleged, as we have seen, to exist at the beginning of the suit. Objections to confirmation of the sale were filed by interveners, they having previously objected to the appraisement, but these were overruled and the sale confirmed on June 22. Interveners bring the cause here by appeal, attacking both the decree of May 6, directing a sale, and also the order of June 22, confirming the same. These orders are both made a part of the transcript which was filed here October 11, and a review of them brings before us also the question as to the validity of the order appointing the receiver (*Seeds Dry-Plate Co. v. Heyn Photo-Supply Co.*, 57 Neb. 214, 216), for if this was invalid the subsequent proceedings, being based thereon, are necessarily so.

Apellants contend that there was no "suit actually commenced and pending" as required by section 267 of the Code before a receiver may be appointed. This requirement is jurisdictional. "The order appointing a receiver was void, for the reason that it was made when there was no suit pending." Cooley, J., in *Merchants' & Manufacturers' Nat. Bank of Detroit v. Kent Circuit Judge*, 43 Mich. 292, 296.

"No authority is given by the statutes of this state to its courts, or to judges thereof in vacation, to make such an appointment, except in a pending suit, nor does it inhere in any of them under their general jurisdiction as courts of equity." *State v. Ross*, 122 Mo. 435, 456; Cf. *In re Brant*, 96 Fed. 257, where the authorities are collated.

Moreover, the suit which must be "actually commenced

and pending" as a condition precedent to an appointment of a receiver, must be one in which the main relief sought is independent of the receivership. The latter is a purely ancillary remedy.

"It is not the office of a court of equity to appoint receivers as a mode of granting ultimate relief. They are appointed as a measure ancillary to the enforcement of some recognized equitable right." Baldwin, J., in *Barber v. International Company of Mexico*, 73 Conn. 587, 593.

"Unless, possibly, in cases provided for by the statute, the appointment of a receiver can only be made in aid of the main action; although such appointment may be a part of the relief sought by the complaint." *State v. Union Nat. Bank of Muncie*, 145 Ind. 537, 550.

"The appointment is not the ultimate end and object of the suit, but is merely a provisional remedy or auxiliary proceeding." *State v. Ross*, 122 Mo. 435, 456.

Tested by these authorities, we are unable to say there was "a suit actually commenced and pending" when the receiver in this case was appointed. It is true that a petition had been filed the day previous, but this would not constitute such a suit, unless it set forth grounds instituting an actual controversy and demanding substantial relief beyond the mere appointment of a receiver.

In *State v. Ross*, 122 Mo. 435, a corporation filed a petition alleging that its plant was heavily incumbered, and praying for the appointment of a receiver, with a prayer, as here, for general relief. A receiver was appointed, but upon application to the supreme court a writ of prohibition was granted, and the court said (p. 457): "The filing of that petition no more instituted an actual controversy between contending suitors in court, than would the filing of a copy of the Lord's Prayer. It laid no foundation whatever for the exercise of the jurisdiction of the court to appoint a receiver, unless some ground for the exercise of that jurisdiction can be found other than an actual, pending controversy in the court which undertook its exercise."

The petition in this case contains no prayer for specific

relief other than the appointment of a receiver. Some of its allegations, indeed, resemble those of an ordinary petition to foreclose a mortgage. But no such relief is asked, and, waiving the question whether a decree of foreclosure may be rendered under a prayer for general relief, we have searched this petition in vain for averments which declare plaintiff's right to a foreclosure. The mortgage itself is not attached to or made a part of the petition, and while some of its provisions are quoted, they are confined to such as show the holder's right to a receiver; they set forth no default which would entitle him to foreclose. The petition conclusively shows not only that the principal debt is not due, but that not even the first coupon had matured at the time the proceeding was begun. The petition merely alleges that the mortgagor will be unable to meet this when the coupon shall fall due—nearly a month later. Not even the appointment of a receiver will be made on anticipated grounds. *Chadron Banking Co. v. Mahoney*, 43 Neb. 214. Much less will a decree of foreclosure be rendered. And not only does the petition fail to state facts which authorize a foreclosure, but the conduct of plaintiffs indicates that they never intended to seek such relief. No attempt has been made anywhere in the progress of the litigation to obtain a decree of foreclosure, and the defendant's property was finally purchased by the president of the corporate plaintiff under a decree which expressly directed the sale subject to and not by virtue of the mortgage.

Nor can this petition be upheld as one for the dissolution of the corporate defendant. It contains no prayer that the corporation be dissolved, but, on the contrary, asks that a receiver be appointed, and that he apply the income "for maintaining and operating said business." The idea of a dissolution does not appear to have been entertained until March 5,—three months after the filing of the petition—when the order was made reciting that it was for the best interests of the parties that the affairs of the corporation be wound up.

But even had the petition contained a specific prayer for dissolution, this would not have supplied a sufficient basis for the appointment of a receiver.

"A court of equity has no inherent power as such to appoint a receiver over an insolvent corporation." Smith, Receivers (3d ed.), sec. 288.

"The general jurisdiction of equity over corporate bodies does not extend to the power of dissolving the corporation, or of winding up its affairs and sequestrating the corporate property and effects, in the absence of express statutory authority. And courts of equity will not, ordinarily, by virtue of their general equitable jurisdiction, or of their visitatorial powers over corporate bodies, sequestrate the effects of the corporation, or take the management of its affairs from the hands of its own officers and entrust it to the control of a receiver of the court, upon the application either of creditors or shareholders." High, Receivers (3d ed.), sec. 288.

Our legislature has enacted statutes which authorize the appointment of receivers for winding up the affairs of particular corporations, as in the case of banks, but none of these apply to such a corporation as the defendant below. This receivership must be sustained, if at all, by the general statutory provisions relating to the appointment of receivers or by the general rules of equity jurisdiction.

"In the absence of a statutory enlargement of equity jurisdiction, a receiver of a corporation will not be appointed unless the same relief would be given, when claimed in an action against an unincorporated association of natural persons." *Barber v. International Company of Mexico*, 73 Conn. 587, 593.

Our statute on this subject is similar to that of Iowa.

In *Wallace v. Pierce-Wallace Publishing Co.*, 101 Ia. 313, 323, it was observed: "We have heretofore held that this section* does not authorize the dissolution of the corporation by a court of equity, nor the placing of its property in the hands of a receiver which practically accomplishes the same purpose."

---

* Code, sec. 2903.

We have not overlooked *Ponca Mill Co. v. Mikesell,* 55 Neb. 98, but we find nothing there to change our conclusions. It was an action by a stockholder to establish and foreclose a lien upon corporate property, and by the same order which granted him this relief a receiver was appointed on the ground that the majority stockholders were mismanaging the corporate business and misappropriating corporate property. It follows *Haywood v. Lincoln Lumber Co.,* 64 Wis. 639, which was an action to foreclose a mortgage executed by the corporation. In both cases, therefore, the plaintiffs were seeking to enforce liens, and the receivership was not, as here, the sole apparent purpose of the proceeding. In both cases grounds for the appointment of a receiver existed independent of the fact that the defendant was a corporation.

But if we were permitted to overlook the fact that no main action was pending when this receiver was appointed, we would still be unable to uphold the order of appointment and the subsequent proceedings thereunder, because it resulted in the sequestration of property by the receiver to which, in no view of the case, was he entitled. The petition merely prayed that he be authorized to take possession of the "property covered by said mortgage," and this would have been the limit of his rightful possession even had the petition sought and set forth grounds for a foreclosure. But the order of appointment gave him possession of "all other property of every kind or character, belonging to or pertaining to said defendant and its business." There never was an application to extend the receivership to other property and this part of the order, at least, was void on its face. Plaintiffs were not entitled in any event to a receivership of property in which they had no definite interest. *Smith v. Wells,* 20 How. Pr. (N. Y.) 158.

The case at bar strongly resembles *State v. Union Nat. Bank of Muncie,* 145 Ind. 537, where a similar course was followed by the trial court, and upon appeal it was observed (p. 551) : "In the case before us, the plaintiff had

no judgment or other general lien against the defendant's property. His only lien was that of his chattel mortgage; and without a suit to foreclose that mortgage he had no right to a receiver even for the property covered by that mortgage. Still less was there a right to a receiver for property not covered by plaintiff's chattel mortgage. The rights of judgment creditors could not thus be cut out by one who had no judgment or other lien upon the defendant's property. From any point of view, therefore, it must be apparent that the court had no jurisdiction to appoint a receiver in this case."

In the case at bar the trial court distinctly recognized that there was property in the hands of the receiver not included in the mortgage, for it directed a sale of this apart from the other. But upon what possible theory had plaintiff a right to seek or obtain the appointment of a receiver of this nonmortgaged property?

Moreover, while the court ordered a sale of some of the personalty without subjecting it to the mortgage, the record shows that other property of that class was not sold in this way, for the decree expressly recites, as we have seen, "that all of the property  *  *  *  real, personal or mixed  *  *  *  save that which is herein specifically found to be personal property, is covered by the said plaintiff's mortgage." How much personal property was thus included in the mortgage, we have no means of knowing, for that instrument is exceedingly comprehensive in its terms and purports to include "all and every description of personal and mixed property."

But the decree plainly shows that some of the personal property was treated as covered by the mortgage, and sold subject thereto. And the result of this must necessarily have been to reduce the assets from which interveners might satisfy their claims.

We do not agree with counsel for appellants that the labor claims of interveners constitute a preferential lien on the assets of the corporation. For, as we interpret the rule in *Fosdick v. Schall,* 99 U. S. 235, 25 L. ed. 339, it

merely upholds the discretionary power of the court which appoints a receiver to impose as terms of the appointment the prior payment of such claims as these. The doctrine is more fully elaborated in *Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co.*, 53 Fed. 182. But while these intereveners may have had no liens other than those afforded by their judgments, they were certainly entitled to share as general creditors in every dollar that could be realized from the corporate assets not clearly appropriated to some higher claim.

Now, this mortgage, though purporting to cover personalty, was never filed as a chattel mortgage and was, therefore, in respect to chattels, "void as against the creditor of the mortgagor." Compiled Statutes, ch. 32, sec. 14 (Annotated Statutes 5963). These interveners were judgment creditors, and therefore within the letter of the rule laid down by this court in *Farmers' & Merchants' Bank of York v. Anthony*, 39 Neb. 343, 348. Whether it was necessary that their judgments should have antedated the mortgage, we do not here decide, for the record discloses that in any event the receiver took possssion of and sold, by virtue of the decree complained of, property which confessedly was not covered by the mortgage.

We see no escape then from the conclusion that the order appointing this receiver was made without jurisdiction and that the subsequent proceedings thereunder were invalid.

We are cited to *Commonwealth Mutual Fire Ins. Co. v. Hayden*, 60 Neb. 636, and *Hawkins v. Glenn*, 131 U. S. 319, in support of the contention that appellant Kinkel, as a stockholder, was bound by the court's order as regards the defendant corporation. The cases referred to simply announce the rule that a stockholder is concluded by a decree compelling the enforcement of a corporate duty. But there was certainly no duty on the part of the corporate defendant below to consent to the appointment of a receiver. Nor was it or any other party bound by an order which the court had no jurisdiction to make. It is a familiar rule that consent never confers jurisdiction over

the subject-matter. This applies in the case of receiverships as completely as elsewhere.

"Consent of the parties before the court will not avail to secure resort to the remedy in a case otherwise improper, or if the rights of other persons will be affected adversely or put in danger of violation." Beach, Receivers, sec. 150.

This case has some of the features of *Merchants' & Manufacturers' Nat. Bank of Detroit v. Kent Circuit Judge*, 43 Mich. 292, where Cooley, J., said (p. 298) : "We do not enlarge upon this aspect of the case, as it is not necessary here; but it must be manifest that the parties were creating a trust by means of the mortgage and of a consent order which could not stand the test of the law.   *   *   * It resembles very closely an attempt by circuitous methods to avoid a legal principle."

In this case the consent of those now complaining was never sought or obtained. Although the petition distinctly averred that there were creditors who "are threatening to attach," and although the statute expressly requires that notice of an application for a receiver shall be given "to all parties to be affected thereby" (Code of Civil Procedure, sec. 267), none of the interveners now holding judgments against the corporate defendant were notified, or given an opportunity to be heard as to the order appointing the receiver.

Under these circumstances, the mere fact that they did not except to the order should not prevent a review of it here. And in any event these objections being jurisdictional, may be raised even in the appellate court for the first time. *City of Lansing v. Chicago, M. & St. P. R. Co.*, 85 Ia. 215; *Orcutt v. Hanson*, 71 Ia. 514.

There are other questions presented in appellants' brief, but as their solution is not necessary to a determination of the case, we will not further prolong the limits of this opinion. We recommend that the decree of May 6, and the order of June 22, confirming the sale, be reversed, and that the order appointing the receiver be vacated.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of May 6, 1901, and the order of confirmation of June 22, 1901, are reversed, and the order appointing the receiver is vacated.

REVERSED.

The following opinion on rehearing was filed December 2, 1903. *Judgment of reversal adhered to:*

1. Petition: No CAUSE OF ACTION: APPELLATE COURT. The question of whether a petition states a cause of action or discloses grounds sufficient for the granting of equitable relief, may be raised at any stage of the proceedings in the appellate court, up to and including the filing of a motion for a rehearing.

2. Prayer for General Equitable Relief. A prayer for general equitable relief, coupled with that of one for specific relief, can not be extended so as to warrant the granting of relief not embraced within and comprehended by the allegations of fact contained in the pleading.

3. Appointment of a Receiver: Is ANCILLARY REMEDY. The appointment of a receiver in an equitable action is ordinarily an ancillary remedy, provisional in character, and incidental to the main object or purpose of the suit.

4. Jurisdiction to Appoint a Receiver. Save in certain classes of suits in equity which constitute well-recognized exceptions, the jurisdiction of courts of equity does not warrant the appointment of a receiver to take charge of and administer the property and business of a corporation in an independent action, where that is the main object and purpose of the suit and the sole and only relief asked for.

5. Defective Petition. Petition in the case at bar examined, construed, and *held* defective in substance, and insufficient to support the orders of the court appointing a receiver to take charge of and sequestrate the property and business of the defendant corporation, directing a sale thereof, and the confirmation of the sale made under such orders.

6. Jurisdiction of Equity Courts Over Corporation. In the absence of statutory authority, courts of equity do not possess jurisdiction over corporate bodies to the extent of, on the application of private parties, appointing a receiver, sequestrating the property and business and selling the same through the instrumentality of such receiver, and thereby wind up the affairs and terminate the business and indirectly dissolve the corporation.

7. **Stare Decisis.** The former judgment of reversal in *Vila v. Grand Island Electric Light, Ice & Cold Storage Co., ante,* p. 222, adhered to.

HOLCOMB, J.

A rehearing having been granted, this cause has been submitted on oral arguments and printed briefs for further consideration. The opinion heretofore formulated, prepared by one of the commissioners, is found under the title *Vila v. Grand Island Electric Light, Ice & Cold Storage Co.* and others, as interveners, *ante,* p. 222. The case is there quite fully stated and a repetition will here be avoided as far as is consistent with a proper discussion of the subject in the present opinion. Gauged by the pleadings, and the procedings had and done thereunder, the suit appears to have been instituted by a mortgagee of the plant and property of the defendant corporation for the purpose of having its property sequestrated, and, through the aid of a receiver, its affairs wound up by a sale of the property and a division of the assets among those entitled thereto. The suit in its practical workings has many of the earmarks of a proceeding had under our statute for the appointment of a receiver and the winding up of the business of an insolvent banking corporation incorporated under the laws of this state. The plaintiffs, as trustee and *cestui que trust,* were the owners and holders of certain bonds executed and delivered by the defendant company, and secured by a mortgage on its plant, consisting of both real and personal property. The defendant company at the time of the institution of the suit filed its answer, admitting the truth of the allegations of the petition and consenting to the appointment of a receiver as therein prayed for. The essential averments of the petition which it seems advisable here to state for the purpose of the further discussion of the case are in substance as follows: That it was agreed by the defendant when the loan was made, evidenced by the bonds executed at the

time and described in the petition, that the proceeds should be used to pay off a prior mortgage, and the balance for the completion of the plant; that prior to the inception of the litigation, the plaintiff learned for the first time that a large proportion of the proceeds of the loan so made had been misappropriated and used for other purposes, and that the plant remained in an unfinished and incomplete condition; that the defendant was at the time, and would be, wholly unable to pay the interest or any part thereof thereafter and within a short time to become due on the mortgaged indebtedness, and was wholly without ability to pay any part of its floating indebtedness, amounting to a large sum, and that its creditors were threatening to attach the mortgaged property; that the defendant was entirely without credit, unable to purchase supplies needed in its business, was without money, and that its business was likely to be stopped either by attachment suits or because of its inability to procure the necessary materials and appliances; and that should the business be discontinued, the value of the property would be greatly diminished, the public put to great inconvenience and great financial loss ensue. The mortgage, it was averred, contained the following provisions: That the defendant agreed to keep all the buildings, machinery, engines, etc., in good repair and condition, and that such agreement had not been kept; that the mortgage also provided that in case of default in the payment of the bonds or interest, or failure to comply with any of its terms, the trustee should thereupon become entitled to the appointment of a receiver to take possession of the property, manage and operate the business, collect the income and profits, apply the same on the expenses and charges for maintaining the plant and business, and paying the obligations secured by such mortgage. Wherefore it is prayed that a receiver be appointed and given authority to do each and all of the things mentioned in the mortgage, to wit, to take possession of the property covered by the mortgage and manage and operate the busi-

ness, collect its income and profits, and apply the same upon expenses and charges for maintaining and operating the business, and in paying the obligations secured by plaintiff's mortgage, and for such other and further relief as to the court may seem meet and proper. Upon the filing of the petition and the answer of the defendant company, a receiver was appointed, who qualified, took possession of the property of the defendant corporation and managed its business until it was sold at receiver's sale under order of court, which sale was afterward confirmed, and from which orders and decrees an appeal is prosecuted by the interveners, one a stockholder of the corporation, and the others general creditors who had reduced their demands to judgment before intervening in the action. To the report of the receiver advising a sale of the property and the order of the court directing the sale and the confirmation thereof when made, the interveners objected, protested, and excepted, but without avail.

Counsel for appellee devote a portion of their argument to the question of whether these intervening parties can be heard to complain on appeal after going into court and asking to have their judgments satisfied out of the corporate property, and after, as is claimed, the stockholder had assisted in and consented to the appointment of a receiver. This phase of the case may, we think, be properly disposed of by the suggestion that in our judgment the pivotal point of the whole controversy and the chief inquiry to be made are with relation to the sufficiency of the petition filed in the case, and whether or not it states a cause of action or discloses equitable grounds for the granting of the relief prayed for or granted to the plaintiffs.

It has frequently been held that the question of the sufficiency of a petition, and whether it states a cause of action, may be raised at any step of the proceedings, even in the supreme court on an appeal, and is open for consideration in the appellate court at any time until and including the filing of a motion for a rehearing. *Kemper v. Renshaw,*

58 Neb. 513; *State v. Moores*, 58 Neb. 285.  If the petition filed in this case does not state a cause of action, if it is defective in substance, if its allegations do not warrant the granting of any equitable relief, then such defect is open for consideration, and the participation of the interveners and appellants in the proceedings had in the court below can in no wise preclude them from urging the insufficiency of the petition to support the orders, decrees and judgment of the court entertaining jurisdiction and trying the cause below.  While the prayer to the petition contains a request for general equitable relief, it must, we think, be admitted that it can not be extended so as to warrant the granting of relief not embraced within or comprehended by the allegations of the pleading.  To be sure, the prayer for relief is a part of the petition, but it is no portion of the statement of facts required to constitute a cause of action.  Consequently, while it may be broader than the allegations of the petition, the cause of action pleaded can not be enlarged or made the basis for the granting of relief other than that warranted by the allegations of facts.  *Fox v. Graves*, 46 Neb. 812, 816, and authorities cited therein.

An examination of the petition in the case at bar renders it obvious that no cause of action is stated therein disclosing a right to the recovery of a money judgment for the amount called for by the bonds, or any portion thereof, or for a foreclosure of the mortgage in satisfaction of any sum which might be found to be due; in other words, none of the debt secured by the mortgage had at the time matured, and there was no breach nor default in the conditions of the mortgage disclosed by the pleadings warranting a foreclosure of the title to and equity of redemption of the property mortgaged, owned and held by the defendant company.  This, manifestly, is the view taken by the parties to the suit and the trial court, since no attempt was made to enforce the obligation secured by the mortgage, or for the sale of the property of the defendant company and the application of its proceeds in satisfac-

tion thereof. What was in fact done was to seize all the property of the corporation, place it *in custodia legis* by means of the receivership, manage it under the direction of the court for a short period of time, and then dispose of it at receiver's sale subject to the mortgage and the indebtedness secured thereby, mentioned in the pleadings as being held and owned by the plaintiffs. The cause of action, therefore, stated or attempted to be stated, was not in respect of plaintiff's right to collect its indebtedness held against the defendant and enforce their mortgage lien, but their right under the allegations of the petition to have a receiver appointed to take charge of and manage the property and business of the defendant company, and to wind up its affairs by a sale of the plant subject to plaintiff's lien, and the distribution of the proceeds, after paying the costs and charges of the receivership, to those found entitled thereto.

We are thus brought to a consideration of the proposition as to whether the plaintiff was warranted in asking solely for the appointment of a receiver to take charge of and administer the corporate estate and to sell the same as was done, and whether the court was authorized to make such appointment and to enter the orders and decree thereafter made and rendered in the further proceedings, to which exceptions are taken. It is to this proposition that counsel have devoted most of their arguments and to which our attention will now be directed. In the former opinion, it was held that a receivership is a purely ancillary remedy and can not be maintained in a proceeding instituted solely for that purpose. The enunciation of this proposition is vigorously challenged by appellees' counsel, but a full investigation and consideration of the subject has dispelled from our minds all doubts, if any have heretofore existed, as to its being a correct and sound declaration of the principles of equity governing and controlling a suit when applied to a condition of facts such as are presented by the record in the case at bar. Of course, where the statute authorizes it, and in some well-recog-

nized exceptions to the general rule, the appointment of a receiver may be and is the main object and purpose of the suit or proceedings.  It is likewise true that in some cases of extraordinary character affecting quasi-public corporations, and where public interests are so involved as to demand the extension of the equitable principles applicable to receiverships so as to protect such interests, some courts have assumed jurisdiction, and claim authority to appoint a receiver where that is the main purpose of the suit, yet such cases have been characterized as announcing a doctrine both novel and unusual.  In all such cases the object of such appointment is to preserve and hold intact the property intrusted to the receiver, and not to destroy, dismember, or by receiver's sale dispossess the corporation of its property and franchise.  Possibly the subject may be made a little clearer by some reference to the nature and character of receiverships and the principles underlying the subject, as gathered from the text-writers and the decisions of the courts of last resort.  A receiver by his appointment does not become a litigant in the action, nor does he represent one more than the other of any of the parties to the controversy.  He, when appointed, takes possession of the property as the right arm of the court for the benefit of the party ultimately entitled to it.  Beach, Receivers, sec. 2.  "A receiver is," says the same author, "a ministerial officer of a court of chancery, appointed as an indifferent person between the parties to a suit merely to take possession of and preserve, *pendente lite,* the fund or property in litigation."  2 Beach, Private Corporations, sec. 772.  The sequestration of property by a receiver in a suit in equity is analogous to the seizure of property by attachment in an action at law.  The appointment of receivers, says the supreme court of Ohio, is classed as one of the provisional remedies, like the proceedings by injunction or in attachment.  Says the court: "A provisional receivership is, in effect, an injunction, and something more stringent still.  It is to be granted with great caution, and only in a case of apparent pressing

necessity. Edwards, Receivers, 13. The appointment of a receiver is an equitable remedy, and bears a similar relation to courts of equity that proceedings in attachment bear to courts of law. Hence the appointment of a receiver has been said to be an equitable execution. Jeremy, Equity Jurisdiction, 249." *Cincinnati, S. & C. R. Co. v. Sloan,* 31 Ohio St. 1, 7. See also *Davis v. Gray,* 83 U. S. 203, 217, 21 L. ed. 447. It must be made to appear affirmatively that there is a reasonable possibility that the plaintiff will ultimately succeed in obtaining the general relief sought in the suit in which the receivership is asked. Smith, Receiverships, sec. 5 (*b*) ; Beach, Receivers, sec. 48. "The appointment of a receiver," says the supreme court of Pennsylvania, "is the exercise of a power in aid of a proceeding in equity, and is the subject of sound discretion." *Chicago & Allegheny Oil & Mining Co. v. United States Petroleum Co.,* 57 Pa. St. 83.

"The law of receiverships is peculiar in its nature in that it belongs to that class of remedies which are wholly ancillary or provisional, and the appointment of a receiver does not affect, either directly or indirectly, the nature of any primary right but is simply a means by which primary rights may be more efficiently preserved, protected and enforced in judicial proceedings. It adjudicates and determines the rights of no party to the proceeding and grants no final relief directly or indirectly." Smith, Receiverships, sec. 2; Beach, Receivers, sec. 51; Pomeroy, Equity Jurisprudence, secs. 171, 1319, 1330; *Miller v. Bowles,* 58 N. Y. 253. In support of the rule announced by the text-writers to the effect that generally the appointment of receivers at the instance of private parties is an ancillary remedy administered by the court, provisional in character, and in aid of the primary object of the litigation, may be cited *French Bank Case,* 53 Cal. 495, 550; *Jones v. Bank of Leadville,* 10 Colo. 464; *Union Mutual Life Ins. Co. v. Union Mills Plaster Co.,* 37 Fed. 286; *Wallace v. Pierce-Wallace Publishing Co.,* 101 Ia. 313, 38 L. R. A. 122, 63 Am. St. Rep. 389; *Barry v. Briggs,* 22 Mich. 201; *People v. Weigley,* 155 Ill. 491.

Aside from the question of the sufficiency of the petition because the appointment of a receiver is the sole and primary object of the suit, and no cause of action or ground for equitable relief otherwise being stated, another insuperable obstacle, and one closely related to the subject heretofore discussed, is the fact that the jurisdiction of a court of equity is invoked for the purpose of seizing the corporate property of the defendant company and winding up its affairs without statutory authority therefor, and without the case being brought within equitable principles sanctioned and taken cognizance of by the courts of chancery of England, from which the equity jurisdiction exercised by the courts of this state is derived. Some authorities are cited by counsel for appellees to the effect that a sale of all the corporate property does not necessarily work a dissolution of the corporation or terminate its legal existence. This, doubtless, is true, and in the cases cited the property, in all probability, was properly seized in satisfaction of just obligations, leaving the corporate entity unaffected, and nothing further was attempted. It may be, and probably is, true that a dissolution of a corporation in a technical sense can be accomplished by the expiration of its charter or the decree of a court of competent jurisdiction forfeiting the same. Yet in the case at bar, in truth and substance, the corporation has been, through the instrumentality of a receiver and by the order and decrees complained of, stripped of its estate, divested of its property and franchise, and its affairs brought to a final termination as completely and successfully as if its dissolution were the avowed object and purpose of the suit.

In *Neall v. Hill*, 16 Cal. 145, 149, it is said: "We are also of opinion that the court erred in the appointment of a receiver, and in decreeing a sale of the property and a settlement of the affairs of the corporation. This decree, if permitted to stand, must result in the dissolution of the corporation; and in that event the court will have accomplished in an indirect mode that which, in this proceeding,

it had no power to do directly. It is well settled that a court of equity, as such, has no jurisdiction over corporate bodies, for the purpose of restraining their operations or winding up their concerns. We do not find that any such power has ever been exercised, in the absence of a statute conferring the jurisdiction."

In *Wallace v. Pierce-Wallace Publishing Co.*, 101 Ia. 313, 322, it is said: "It is certainly true that, in the absence of express statutory authority, jurisdiction of courts of equity does not exist over the corporate bodies to such an extent as to justify them in dissolving corporations, or of winding up their affairs and sequestrating their property. This seems to be so well settled that there is scarcely a dissenting voice in authority." See also, *Wheeler v. Pullman Iron & Steel Co.*, 17 L. R. A. (Ill.) 818; *Link Belt Machinery Co. v. Hughes*, 63 N. E. (Ill.) 186; *State v. Second Judicial District Court*, 15 Mont. 324.

We have examined with diligence and care the many authorities cited by appellee in support of its contention as to the authority of the court on equitable grounds to appoint a receiver, the regularity of the appointment in the case at bar, and the subsequent proceedings had, but we find none of them to give substantial support to the doctrine contended for. In each and all of the authorities save the exceptional cases heretofore referred to, the jurisdiction of the court in appointing a receiver was invoked as an exercise of power ancillary and incidental to the principal relief sought by the parties to the litigation. The parties all appear to have been either stockholders or creditors who had an actual and subsisting demand, a present right or claim which it was sought to have enforced, and the appointment of a receiver was in aid of and for the purpose of making effective a prospective judgment or decree to be rendered in the action which, *prima facie*, they were shown to be entitled to at the time of its commencement and the appointment of such receiver. We find no authority giving unqualified support to the doctrine that a mere mortgage of corporate prop-

erty, because of an anticipated default of the indebtedness, a possible inability to continue much longer the conduct of the business, threatened attachments, financial weakness or insolvency, and in the event of the suspension of business, a consequent depreciation of the value of the mortgaged property, may for these reasons, in an independent action and for no other purpose, have a receiver appointed, the corporate property sequestered, the business conducted by the receiver until by a receiver's sale the estate may be sold subject to the mortgage indebtedness, and the affairs of the corporation terminated. To establish such a doctrine in this jurisdiction is, in our judgment, unwarranted, unsupported by authority and fraught with dangerous consequences.

The petition, we are satisfied, states no cause of action, nor warrants the granting of any equitable relief, and therefore the order of sale of the corporate property and the confirmation thereof, as well as the appointment of a receiver, was without authority, unsupported by the pleadings, and for such reasons, the judgment heretofore rendered reversing the orders and decrees so entered should be adhered to, which is accordingly done.

FORMER DECISION ADHERED TO.