ANNE MATTISON AKERS, a Single Woman, v. L. O. CORBETT, Individually and as President and Treasurer of the J. E. Corporation, J. E. CORPORATION and HOWARD R. CORBETT, Intervenor.

190 So. 28
Division A
Opinion Filed June 23, 1939

*J. H. Mercer, John G. Simms* and *Murrell & Malone,* for Appellant;

*Meyer, Davis & Weiss* and *Uly O. Thompson,* for Appellees.

THOMAS, J.—Appellant brought suit in the Circuit Court against J. E. Corporation and L. O. Corbett, individually and as its president and treasurer, alleging, in substance, that the principal asset of the corporation was a hostelry known as Tropics Hotel. The basis of the action was an agreement signed by appellant and appellee L. O. Corbett stipulating that the latter would sell to the former twenty-four of the forty-eight shares of the stock he owned and would convey the remainder as security until all indebtedness had been discharged, in which event the twenty-four shares held as security would be returned to appellee Corbett. A further purpose in pledging one-half of Corbett's interest was to assure his faithful supervision of the corporate affairs and his proper accounting for moneys handled by him. For his services Corbett was to receive a "salary commensurate with the income of the properties owned by the corporation, or as from time to time may be agreed upon." It was averred in the bill that but fifty shares were authorized and that two shares were not outstanding.

Appellant charged that Corbett had violated his obligations under the contract by failing to properly conduct the company's affairs, to keep accounts and to make an accounting.

Because of this alleged misconduct and the failure to agree upon any plan for the solution of their difficulties it was prayed that an accounting be ordered, a receiver appointed and that, in the absence of any other way out of their dilemma, the assets be sold and the proceeds distributed.

The joint answer of appellees denied in the main the material parts of the bill and presented counter charges that appellant managed the hotel for a while and herself kept

no account of income, intermingling proceeds with her own money, all before the contract was actually executed but after the date it bears. Then followed a series of allegations that appellant was familiar with the business, actively participated in it and by her own conduct rendered an accounting impracticable.

After an application for the appointment of a receiver had been denied the appellee Corbett presented a cross bill setting forth various dealings with appellant extending over a decade and asked for an accounting of all of said transactions and for other relief.

Upon the answer to this pleading and the issues theretofore formed by the bill and answer, a master was appointed to take the testimony and to report his findings of law and fact based thereon and upon the evidence introduced apropos the application for a receiver. His report contained nearly three hundred pages and obedient to the order he gave his conclusions of law appropriate to the facts as he interpreted them.

Subsequent to the filing of exceptions to the master's report the chancellor proceeded to hear additional witnesses and to allow a petition for intervention by one Howard R. Corbett, who claimed to own one share of stock.

Ultimately, with few revisins, the exceptions to the report were overruled and final decree was entered.

The master's report reflects his thorough study of the case. He discussed fully the relationship of appellant and appellee Corbett and concluded that upon material issues their testimony was irreconcilable. He found that certain properties (exclusive of the hotel) were owned by appellant, by appellee Corbett's former wife, who was not a party to the suit, and by appellant and appellee jointly.

With reference to the Tropics Hotel he concluded that no real interest was evidenced by two shares of capital stock,

they having been issued only to meet the statutory requirement, and that appellant and appellee Corbett had equal interest in the assets, each holding twenty-four shares of the capital stock. He also found that it would be useless to require an audit, presumably for the whole period, because the recommendation is made that a receiver be appointed and that he procure an audit for the time beginning January 1, 1938.

The final decree, in adopting the master's findings, except where inconsistent with the following provisions, decreed: that the corporation owned the hotel and that the appellant and appellee Corbett each own one-half of the stock; that a receiver be appointed to take charge of the hotel; that other property described therein was owned by these persons as tenants in common; that both parties be allowed an income from the property to pay their attorneys "from time to time upon further order of this court;" and that jurisdiction be retained for all purposes.

From an examination of the voluminous record we think the view is inescapable that both parties sought the aid of a court of equity to determine their interest and wind up their affairs. It will be remembered that the one, by her bill, prayed for an accounting of receipts and expenditures of one piece of property in which both claimed equal shares, while the other asked that the same relief be extended to other transactions reaching back over a period of many years. We are at a loss to understand how their difficulties may be set at rest by the final decree without any attempt at an accounting. It is apparent that no intelligent audit could be made from the evidence adduced, but statements were made by various witnesses, notably the parties litigant, to lead us to believe that records are in existence from which an accounting could be made. Both parties, appellant and appellee Corbett, testified, for instance, that deposits were

made in the account of the former. These deposits and withdrawals should be traceable and the individual items identified and properly credited and debited. Much of the information, such as payments for taxes and amounts secured by mortgages, could be definitely determined from public records; the cost of buildings from the builders, and the price of lots from the sellers. At least one income tax return is available.

There were charges against each other about the inexpertness with which joint affairs were handled and it would be difficult indeed to fix blame more on one than the other. Both parties were extremely lax in recording their receipts and expenditures. Both were unable to give an intelligent account of the details of their investments. For instance, appellant said she had paid to the corporation twenty or thirty thousand dollars and again, "I think I knew that mortgage was $30,000." These parties had a joint bank account in which appellant's individual funds were intermingled with those of the corporation. Some of the income from the operation of the hotel went for improvement of other property. He and she conducted the affairs of the hotel intermittently and at one time both were in charge.

Everything considered, the management of their affairs by themselves hardly conformed to recognized business standards and a strict accounting may be difficult, but we are not convinced it is impossible. A practical termination of the relationship depends on an audit, for without it an adjudication of their respective interests would be but speculation. So we think that the case should be referred back to the chancellor, and if he decides to do so, to the master to effect an accounting and, using it as a yardstick, to adjudicate the interests of the parties.

Another error assigned is the lack of finality in the final

decree. A receiver was appointed to take charge of the hotel property, but to what end and for what purpose?

It is said by the authorities that appointment of a receiver is to effectuate a right granted a litigant and is not in itself a right. Clark on Receivers (2d Ed.), Vol. 1, p. 59.

"A receivership is ancillary to the main suit where a cause of action exists and is asserted independent of such receivership, and the corporation, as such, has no right to ask for a receiver for itself." Continental Trust Co. v. Brown, (Tex. Civ. App.) 179 S. W. 939, text 944.

"The latter is a purely ancillary remedy. 'It is not the office of a court of equity to appoint receivers as a mode of granting ultimate relief. They are appointed as a measure ancillary to the enforcement of some recognized equitable right.' Baldwin, J., in Barber v. International Co., 73 Conn. 593, 48 Atl. 758. 'Unless, possibly, in cases provided for by the statute, the appointment of a receiver can only be made in aid of the main action, although such appointment may be a part of the relief sought by the complainant.' State v. The Union Nat. Bank, 145 Ind. 550, 44 N. E. 585, 57 Am. St. Rep. 209. 'The appointment is not the ultimate end and object of the suit, but is merely a provisional remedy or auxiliary proceeding.' State v. Ross, 122 Mo. 456, 25 S. W. 947, 23 L. R. A. 534." Vila v. Grand Island Electric Light, Ice & Cold Storage Co., 68 Neb. 222, 94 N. W. 136, text 138.

It is an auxiliary act by the court to aid in the enforcement of a right granted to a party to the cause. High on Receivers (4th Ed.), p. 10.

"On the question of receivership in general it is timely to state in this connection that the power to appoint a receiver is one inherent in a court of equity; that it is a matter of discretion and not one of right; that as a rule the

remedy is ancillary, and, except in rare and (un)usual instances, cannot be maintained in an action instituted alone for that purpose." Armour Fertilizer Works v. First Nat. Bank, 87 Fla. 436, 100 So. 362, text 365.

"It is well settled by the authorities that a receivership is merely ancillary to the main cause of action, and not an independent remedy, and can only be resorted to in a pending action brought to obtain specific relief which the court has jurisdiction to grant. Vila v. Grand Island Electric Light Co., 68 Neb. 222, 94 N., W. 136, 97 N. W. 613, 63 L. R. A. 791, 110 Am. St. Rep. 400, and authorities cited in 4 Ann. Cas. 66; 34 Cyc. 29; Murray v. Superior Court of Los Angeles County, 129 Cal. 628, 62 Pac. 191.; Mann v. German-American Inv. Co., 70 Neb. 454, 97 N. W. 600." Red River Potato Growers' Ass'n. v. Bernardy, 126 Minn. 400, 148 N. W. 449, text 450.

Being an ancillary, as distinguished from a primary proceeding, it loses its significance unless its purpose in relation to the adjudication of the principal issues is established.

Applying these rules to the facts in the instant case grave doubt is cast on the propriety of the final decree establishing ownership in certain tracts and appointing a receiver with no definite purpose indicated.

The decree is reversed for further proceedings compatible with the views herein expressed.

It is so ordered.

TERRELL, C. J., and BUFORD, J., concur.

CHAPMAN, J., concurs in opinion and judgment.

Justices WHITFIELD and BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.