SMITH, D. C., Associate Judge.
The appellant, the plaintiff below, through his complaint sought specific performance, an accounting and a money judgment. Each defendant in his/her answer joined in plaintiff’s prayer for an accounting.
The trial court in its final judgment made the following recitals, findings and determinations:
“This suit seeks the specific performance of an option given by one co-tenant to the other co-tenant, relating to the vendor’s undivided interest in the jointly owned properties, consisting of three parcels of real estate in Palm Beach County.
The vendor, one Chaine, died December 16, 1968, at time prior to the institution of this suit. The purchaser, one Sa-leeby, died July 12, 1971, pending the action.
Two of the parcels were improved and revenue producing, while the third one was unimproved and unproductive. The deeds by which the co-tenants acquired title purported to vest in each an undivided half interest in each parcel. One of the deeds was dated April 16, 1965, another was dated May 4, 1965, and the third was dated May 13, 1965. It was agreed at the trial that one of the parcels cost $13,000, another - cost $8,000, and the third cost either $6,000 or $6,250. Of the total sum paid for the land, Chaine paid $23,100 and the purchaser, Saleeby, paid either $4,000 or $4,250. As a result, Saleeby owed Chaine no less than $9,425 to equalize their payments for the properties.
The trial of the disputes between the present parties to this suit was made more difficult because of the death of the principals as above noted.
Under date of March -, 1967, Chaine signed a memorandum as follows: T agree that my partner, John Sa-leeby, may buy my half share of our joint properties at anytime that he finishes paying up, at our original price.’
Later, on August 5, 1967, Chaine signed what purports to be a codicil to his will in which he referred to the fact that ‘John A. Saleeby shall have the Option to purchase any real property wherein the ownership is one of co-ownership between John A. Saleeby and myself. This Option shall be effective for a period of six (6) months from the notification to him of my death at the price which I paid for my half of said property. If John A. Saleeby does not exercise this Option within said six months, this Option shall cease and be null and void. I specifically order and direct my Executor to make this property available to John A. Saleeby at the exact Purchase Price of my one-half interest, and I direct that he shall execute any and all Documents necessary to accomplish this.’
As noted, Saleeby should have paid Chaine $9,425 to equalize their investments in the properties. In order to exercise the option, Saleeby would have to pay to Chaine the further sum of $13,675. In addition, during the entire ownership of these properties, Saleeby was in charge of it, collecting rents and proceeds, maintaining the property and paying taxes, insurance, etc. Thus, there were three accounts from Saleeby to Chaine: (1) Repayment of Chaine’s advances in behalf of Saleeby in purchasing the properties; (2) Saleeby’s pur *132 chase of Chaine’s undivided half interest according to the option; and, (3) Salee-by’s duty to account to his co-tenant, Chaine, for proceeds from the properties.
The evidence shows many unidentified financial transactions between the parties. Funds were paid to Chaine by Sa-leeby, or on his account, but whether they were on account of proceeds collected from the properties, or in payment of Chaine’s advances for Saleeby, or in fulfillment of the option, must be left to speculation and guesswork. Saleeby and Chaine were close and trusting friends. As is frequently the case under such circumstances, their dealings were on a loose and rambling basis. Much was left to ‘word of mouth,’ which was lost when death sealed their lips.
In a case such as this, proof should be of a clear and convincing character. Proof of that character, that Saleeby had completed payments in accordance with the option, is lacking. As a result, the Court finds itself unable to make a determination from the evidence that Plaintiff is entitled to specific performance of the option. Thereupon,
It is ORDERED AND ADJUDGED that the complaint is dismissed, with costs taxes against the plaintiff.”
The trial court found that clear and convincing proof that Saleeby had completed payments in accordance with the option is lacking and that as a result the court is unable to make a determination that the plaintiff is entitled to specific performance of the option. This finding by the trial court is supported by the record. However, its findings that during the entire ownership of the properties, Saleeby was in charge of it, collecting rents and proceeds, maintaining the property and paying taxes, insurance, etc., is not supported by the record. The record shows that from the time the cotenants acquired the properties in question until some time after Chaine’s death, Chaine and his wife collected the rents and income entirely, except for an isolated instance or two, and that Saleeby paid the upkeep and maintenance thereon.
The weight of modern authority is to this effect:
“A tenant in common must account to his cotenants for rentals received from .others to whom the property has been let, as where he puts the property in possession of a third person from whom he collects the rents. The accounting is based on the actual amount received, and not on the rental value of the property or what might have been received, unless the cotenants have been ousted or excluded, or there is no better evidence as to what has been received than the rental value. It is immaterial if the rents or profits so received accrued from a portion of the common property instead of from all.” 86 C.J.S. Tenancy in Common 47, page 413, and authorities cited; SI A.L.R.2d, pages 396-409, and 8 Fla. Jur., 75, Cotenancy, Section 18.
While it is true, as the trial court has observed, the trial of the disputes between the present parties to this suit was made more difficult because of the death of the principals and the dealings between the decedents were on a loose and rambling basis, with much being left to ‘word of mouth,’ however, the record is reasonably explicit as to the rents collected by the Chaines and the expenditures made for maintenance, repairs, taxes, insurance, etc., by Saleeby. With all of the parties seeking an accounting, they are entitled to such relief and it was error for the trial court to dismiss the case without granting such relief. 1 Fla.Jur., 91-92, Accounts and Accounting, Section 16; Akers v. Corbett, 1939, 138 Fla. 730, 190 So. 28.
The judgment appealed from is affirmed as to the denial of specific performance, reversed as to failure to grant an accounting and remanded for the granting of such relief.
Affirmed, in part; reversed, in part.
CROSS and MAGER, JJ., concur.