LE WARNE *v.* MEYER *et al.*, (HARRIS, Intervenor.)

(*Circuit Court, E. D. Louisiana.* March 14, 1889.)

CORPORATIONS—ORGANIZATION FOR ILLEGAL PURPOSE—RIGHTS OF STOCKHOLDERS.

Individuals owning a grant from the Mexican government of lottery franchises and privileges, organized a corporation under the public improvement law of Louisiana, for the avowed purpose of constructing, operating, and developing various public improvements in Mexico, but for the real purpose of carrying on a lottery in that republic. The capital stock was fixed at $1,000,-000, all of which was issued as fully paid-up stock to subscribers who paid nothing therefor. *Held,* that as by the constitution of Louisiana the lottery business is prohibited unless the privilege is granted by the state, as is also the issue of paid-up stock without any payment in fact being made, the subscribers to the original stock acquired no interests which a court would protect.

In Equity. Motion for an injunction and appointment of receiver.

About February 13, 1888, the Mexican government ceded to Gen. Pedro Beranda, under certain terms and restrictions, lottery franchises and privileges to draw lotteries in Mexico. These franchises and privileges passed by assignment, the terms of which are not known, to Gen. Beranda and associates, for the purpose of carrying out the contract, and

carrying on the lottery. The associates organized an incorporation under the public improvement law of Louisiana for the purpose of carrying on the lottery business in Mexico. The corporation was organized under the name of "The Mexican International Improvement Company," for the avowed purpose of constructing, operating, maintaining, promoting, and developing various works of public and private improvement in the republic of Mexico. The capital stock was fixed at $1,000,-000, divided into 10,000 shares of $100 each, to be paid in as might be provided by the board of directors; and the board of directors were authorized to issue such portions of such stock as they thought necessary, as full-paid stock, for the purchase of property, franchises, and grants, and payment of labor done, and services performed. Immediately, upon organization, the full amount of stock was issued as full-paid stock, and divided among the associates or promoters of the enterprise. Such stock was thereafter put upon the market in New Orleans, and notoriously and openly bought and sold as Mexican Lottery stock. All the stock being issued as full-paid stock, to be given out for the purchase of the lottery privilege, it became necessary to raise by other means funds sufficient to comply with the contract of the Mexican government, and to carry on the lottery business. Thereupon a general meeting of stockholders was called in pursuance of the laws of Louisiana in such cases made and provided, for the purpose of increasing the stock. At such meeting eight-tenths of the stockholders were represented in person or by proxies. At the meeting the charter was amended so as to authorize the issue of $1,000,000 of preferred stock and $400,000 of bonds, to be subscribed and paid for on certain terms and conditions; the preferred stock so issued to be paid, as dividends, 50 per cent. of the net earnings of the company; 25 per cent. of the same being set apart to pay dividends on certain 2,500 shares of the original stock issued to certain persons; the remaining 25 per cent. of net earnings to be applied as dividends on the remaining $750,000 of original stock. When this arrangement was concluded, the ordinary stock rose rapidly in the New Orleans stock market, from $5 and $6 a share to $60 and $70 a share. On the 12th of January, 1889, Benjamin F. Le Warne, a citizen of California, had transferred to him on the books of the company 100 shares of this stock. On the 14th of January he applied, through an attorney, by letter, to the directors of the company to have issued to him his proportion of the preferred stock and of the bonds provided for in connection with the issue of preferred stock. The demand was rejected on the ground that the preferred stock was all subscribed for. Thereupon he brought his bill attacking the issue of preferred stock. He alleged fraud and conspiracy in the board of directors; the illegality of the proceedings in relation to the issuing of preferred stock; prayed for an injunction restraining the recognition of the preferred stock as valid stock, and for a decree declaring the whole issue of preferred stock illegal, null, and void. Soon after he filed an amended bill, wherein he set forth, among other things, the following, from information received by him and coming to his knowledge since the filing of the original bill:

"That he has reason to believe, and does believe, and therefore charges, that not only are said defendants guilty of the wrongs and unlawful acts complained of and set forth in said original bill of complaint, but they were and are guilty of other serious and flagrant wrongs and frauds upon the rights that your orator holds in common with the *bona fide* good faith holders of all the other shares of the original 10,000 shares of capital stock of said defendant corporation. That said defendants, as the directors and officers of said corporation, have without any warrant of law, and in utter disregard of the rights of the *bona fide* shareholders, undertaken to subsidize said corporation, its assets and credits, to the accomplishment of fraudulent and illegal purposes, and. unless controlled by the restraints to be put upon them by this honorable court, will squander and destroy the same in acts and operations *ultra vires* of any power incident to, or vested in, the said corporation, under and in virtue of its original charter, and also *ultra vires* of any power or authority that could lawfully be vested in or reside in the officers and directors or representatives of any corporation that can have lawful existence under and by virtue of any general law of the state of Louisiana, under which said defendant corporation was originally sought to be organized and created, as shown in said original bill of complaint, and to do acts in the name of said corporation, and apparently for said corporation, that are prohibited, or at least not permitted, by the laws of the state of Louisiana. That, as averred and set forth in the said original bill, your orator, at the time of the purchase of said shares of stock in said defendant corporation, had reason to believe, and did believe, that the objects and purposes of said corporation were fairly and honestly set forth and contained in its said original charter, as same stood, and was made public prior to any fraudulent attempt to amend the same, and that the purposes and objects for which said corporation was organized, and the business that it was intended to prosecute, was lawful, and connected with some public or private enterprises and improvements, or works of public improvement, to be prosecuted within the limits of the territory of the republic of Mexico. That, as averred in said bill of complaint, as originally filed herein, your orator had never been permitted to see or examine the terms, conditions, or character of said grant or concession, which the said defendants held out as a valuable grant or concession from the government or authorities of the republic of Mexico, but believed that the same related to legitimate transactions and public improvements which might become a source of profit and income to the corporation when prosecuted, the prosecution and carrying on of which might be, and was to be, within the limits and range of the purposes of said corporation, as explained and set forth in the act of incorporation. That since the filing of said original bill of complaint there has been made public through the public press of the country what is alleged to be the text of said alleged concession of the Mexican government, and your orator has reason to believe, and does believe, that the text of said concession, as made public through the public press, is substantially correct, and substantially sets forth the range, purpose, extent, and character of said alleged concession or Mexican grant, which the said defendants claim to hold an interest in either by assignment or some convention, and the same is set forth with substantial accuracy, and contained in a printed copy thereof, filed with these amendments. That your orator has made inquiry concerning the verity of the same, and is informed and verily believes that same is a substantial, exact, translated reprint from the said concession or grant of the said Mexican government. That if said grant be, as set forth and contained in said exhibits, the representation that the said Mexican concession and grant acquired by said defendant corporation was in character or legal effect any concession or grant giving to the grantees or assignees thereof any rights, privileges, or valuable immunities, or sources of profit connected

with the construction of any public improvements, as based upon any grant or concession or privilege conferred, set forth, or disclosed in said exhibits, same was and is for all things a false representation. That your orator is informed and believes that the entire object and purpose of said concession, as evidenced in said publication thereof, is simply to prosecute and carry on a lottery under the conditions prescribed in said grant, and that the said scheme is not on the face thereof any instant or future relation to, or any legal action with, any scheme or system or grants of rights to carry on or prosecute for profit works of public or other improvement within the territory of the republic of Mexico; but, on the contrary, simply contains and sets forth a scheme and project for conducting a game of chance, commonly called a 'lottery,' with stipulations and conditions regulating the manner in which said lottery scheme shall be drawn. That the said defendant corporation, and the said defendants as officers thereof, are, as your orator is informed and believes, undertaking to use the said defendant corporation's credits, assets, and property for the sole purpose of furthering, aiding, carrying out, and prosecuting said lottery scheme, and that there is, and can be, no warrant or authority, under the charter of said defendant corporation, as the same was made and published, to embark in said scheme or imperil the funds or property or credit of said corporation, directly or indirectly aiding or carrying out said lottery scheme, either for and on account of the government of the republic of Mexico, or any person or persons in Mexico or elsewhere, interested therein, or for and on account of any lawful holders of shares of stock in said corporation; and that any attempt to do so in any particular and respect is to put the assets, property, and credits of said defendant corporation in peril, and is in all respects *ultra vires;* and that, under the law of the state of Louisiana authorizing the organization of corporations, no corporation can be lawfully created with power to carry on, prosecute, or embark in said lottery scheme, the same not being one of the enumerated purposes named in the law for which corporations can be lawfully organized or created in Louisiana, under the general laws thereof."

The amended bill further alleged fear on the part of the complainant that the defendants would carry the assets and property of the corporation out of and beyond the jurisdiction of the court, and otherwise complicate the affairs of the defendant corporation. Complainant renewed his prayer for decree and injunction, and also prayed for the appointment of a receiver with qualified powers. In the suit one Albert Harris, alleging himself to be a stockholder in the Mexican International Improvement Company, intervenes, attacking the issuance of preferred stock, and asking practically the same relief as the complainant. On the hearing of motion for injunction and receiver affidavits were submitted attacking the good faith of the complainant, justifying the proceedings with regard to the issuance of preferred stock, and showing that over eight-tenths of the stockholders holding original stock were well satisfied with the proceedings of the directors and the *status* of the company. In argument, counsel on both sides admitted that the Mexican International Improvement Company was organized for no other purpose than to carry on the lottery business.

*H. L. Lazarus* and *J. R. Beckwith,* for complainant.
*Bayne & Denegre,* for intervenor.
*Buck, Dinkelspiel & Hart* and *W. W. Howe,* for defendants.
Before PARDEE and BILLINGS, JJ.

PARDEE, J.    The Mexican International Improvement Company was organized under the general law of the state of Louisiana providing for the organization of corporations for works of public improvement and other purposes.    It has neither charter nor privilege from the legislature of the state of Louisiana.    The objects and purposes of the organization, as declared in the charter, are: "To construct, operate, maintain, promote, and develop various works of public and private improvement in the republic of Mexico."    The present case shows that the real objects and purposes of the organization were the purchase of lottery franchises and privileges, and the carrying on of the lottery business.    It had no other purposes, nor has it any other business.    The charter is a fraud on the law of the state.    Unless the lottery privilege is specially granted by the state, the lottery business is prohibited by the law of Louisiana. See Const. 1879 and act No. 44 of 1879.    The interest of the complainant and of the intervenor is that of stockholders of the organization in the original issue of $1,000,000 of stock upon which not one dollar has been paid, but all of which was issued as full-paid, and all of which was given out and distributed under the pretense of paying for labor and services rendered; but in fact for the purchase of lottery privileges.    Such issue of stock is in violation of the constitution of the state, and entitled to no protection in the courts.    The complainant and the intervenor, at the time they acquired their stock, knew, or ought to have known, the object, scope, and illegality of the organization, and the tainted nature and consideration of the stock they acquired.    The interests of the complainant, the intervenor, and the defendants, for the reasons above given, are illegal, and for their adjustment or protection can have no judicial aid.    *In pari delicto potior est conditio possidentis.*    The motions for an injunction and the receiver are denied.    The restraining order heretofore issued in the case will be discharged.

BILLINGS, J., concurs.