GUSTAVE A. MANN, APPELLEE, v. GERMAN-AMERICAN IN-
VESTMENT COMPANY, APPELLANT.

FILED DECEMBER 2, 1903. No. 12,701.

1. **Tontine Company: RECEIVER.** The holder of a contract, purporting to·be for the purchase and sale of a diamond, issued by what is commonly called a tontine company, is not a stockholder in such company, and can not secure the appointment of a receiver for such company because of the mismanagement of its affairs by its officers.

2. ———: ———. The holder of such a contract who has not reduced his claim to judgment, and who has no lien upon the property of the company, has no standing in a court of equity in an action to sequester or impound the assets of such company.

3. ———: EQUITY. Whether the holder of such a contract can have "clean hands" as required of one who seeks the aid of a court of equity, *quære*.

4. Receiver: AUTHORITY TO APPOINT. An order of the district court appointing a receiver for a corporation, in an action wherein such relief is the only relief sought, will be vacated for want of authority in such court to make the same.

5. Petition: PRAYER. A prayer for general relief, coupled with one for the appointment of a receiver, only, will not be considered as a prayer for relief other than such appointment, unless the petition states a good cause of action for other relief.

APPEAL from the district court for Adams county: ED L. ADAMS, JUDGE. *Reversed and dismissed.*

*Frank P. Olmstead,* for appellant.

*Robert S. Batty* and *Harry S. Dungan, contra.*

GLANVILLE, C.

This action is one commenced by the plaintiff, appellee, by filing in the district court for Adams county his petition in equity; and the case may best be reasoned by first giving a copy of the petition in full. The petition is as follows:

"Plaintiff complains of the defendant and says:

"1. That at all times hereinafter stated the defendant is and was a corporation duly incorporated and existing under and by virtue of the laws of the state of Nebraska, with an alleged capital stock of $60,000, divided into shares of $100 each; and engaged in the business of issuing contracts, copies of which are hereto attached, and made a part of this petition, and marked exhibits 'A' and 'B,' and in no other.

"2. That the incorporators were, and are, Fred Lilljeberg, John C. Kay and John M. Doyle. That there has been issued by the said corporation, approximately, 200

contracts, the exact number being to this plaintiff unknown, a portion of which were of the same form as exhibit 'A,' the balance, being denominated a diamond contract, as exhibit 'C.'

"That various persons purchased said contracts, their names being unknown to this plaintiff, except as hereinafter set forth. That the said Fred J. Lilljeberg, John M. Doyle, and John C. Kay held the first nine contracts, and applied the first $900 received by the said corporation to the payment thereof, and that, thereafter, the tenth contract was paid by the defendant to the aforesaid president, secretary and treasurer thereof. That since the tenth contract was paid on or about the — day of ——, 1900, the said defendant has collected from the said contract holders a large sum of money, the exact amount being to this plaintiff unknown, and that, thereafter, to wit, on or about the 1st of February, 1901, the president and secretary of the defendant corporation attempted to sell and transfer the corporation and contracts, privileges and emoluments of the business and all rights and property interests therein, whatsoever, to one W. S. McAuley, and thereupon, pretended to resign their respective offices as president and secretary to the board of directors, who failed and refused to elect their successors, and have since refused and failed so to do. That the holders of the said alleged stock, if there be any, are to this plaintiff unknown. That, at the time of the said pretended transfer and sale, the said president and secretary had in their possession and under their control the sum of $369 belonging to, and forming a part of, the funds of the said defendant corporation, which they, the said secretary and president, failed and neglected to turn over to their alleged successor, or account for, but proceeded to draw from the bank the said sum, and appropriated the same to their own use and benefit, and have ever since refused and failed to account for the same, to the damage and prejudice of your petitioner. That since the pretended transfer, this plaintiff and various holders of contracts have paid to the said McAuley about $900, the

exact amount being to this plaintiff unknown, who received the said sum and holds the same for defendant's use. That, according to the provisions of said contracts shown in exhibits 'A' and 'B,' 80 per cent. of all the funds received by the said corporation were to be and remain the absolute property of the holders of said contracts, and were to be applied in the retirement and discharge of the said contracts, consecutively, and in the order of their issue; said contract being the stock or shares of defendant corporation.

"3. The plaintiff avers, and charges the facts to be, that the defendant corporation, and its above named officer, has wholly failed to apply the funds received by it under the provisions of the said contracts to the payment and discharge of the contracts issued by said corporation, as provided by its rules and articles.

"4. The plaintiff further charges that he is the holder and owner of contract number 35, being filed herewith, and marked exhibit 'C,' and made a part of this petition, being one of the 200 contracts issued as herein charged, and has paid in to said company the sum of $80, and holds the said contract which is fully paid up according to the provisions thereof. That the money paid by the plaintiff to the defendant, as aforesaid, constitutes a part of the funds herein charged to have been misapplied or in the hands of the pretended successor of the defendant corporation.

"5. Plaintiff further charges that the defendant has ceased to do business, has failed to elect officers or call an election for that purpose, has misapplied the funds, and attempted to convey all the corporate interests. All of which was done contrary to the power and authority invested in the said defendant corporation, and to the injury and damages of your petitioner.

"6. The plaintiff further alleges, and charges the facts to be, that defendant corporation has never had an election, has never issued certificates of stock other than the contracts herein set forth, and that there has never

been an election of directors or officers, nor a legal adoption of rules or by-laws by the said defendant, and that the said president, secretary and treasurer have, at all times, acted wholly without authority, as plaintiff verily believes.

"Whereupon, the plaintiff prays the court to appoint a receiver to take charge and control of defendant corporation and all property belonging thereto, to collect the funds and apply them *pro rata* among the holders of said contracts, as the court may direct, and have such other and further relief as to the court may seem just."

Exhibit "C" referred to in said petition, being the contract under which the plaintiff claims, is as follows:

"DIAMOND CONTRACT. No. 35.

"Know all men by these presents: That if G. A. Mann, the holder hereof, shall first well and truly make each and all of the payments herein provided for, to be made by him at the times and in the manner herein specified, time, manner and the amount of payment being of the essence hereof, the German-American Investment Company, of Hastings, Nebraska, will deliver to him, or to his legal representatives or assigns, under and according to the terms and conditions and in the manner and order hereinafter set forth, a commercial white, clear and flawless diamond, of the weight of two carats, and of the value of $100 per carat.

"The holder hereof promises and agrees to pay to the company, at its home office, in the city of Hastings, the full sum of one hundred dollars in the following manner, to wit: Five dollars on the delivery hereof, the receipt of which is hereby acknowledged, and one dollar and twenty-five cents on or before the last day of each calendar week following the date hereof, for sixty consecutive weeks. If he shall fail to pay any of said instalments within the week in which it is payable, the said delinquent instalment, together with the additional sum of twenty-five cents, may be paid at any time before the end of the next succeeding calendar week; but if he shall fail or neglect

to pay any of said weekly instalments at the time and in the manner herein provided, and shall continue in such default for more than one week, then, and in that event, this contract shall, because of such default, become and be wholly null and void, and all payments theretofore made thereon shall be forfeited.

"The weekly instalments having been paid hereon to and inclusive of the sixtieth week, this contract shall be deemed fully paid up and nonforfeitable, and the holder shall be entitled to receive the diamond herein described, provided, however, that if, at such time, the amount in the hands of the company to the credit of this contract is not equal to the sum of $200 heretofore provided, then, the diamond shall not be delivered until the amount to the credit hereof shall equal that sum. Coincident with such delivery to the holder of a contract, of such diamond, he shall surrender his contract to the company for cancelation. The company shall employ one dollar of each weekly instalment of one dollar and twenty-five cents paid in on this and other contracts, together with all fines, lapses and forfeitures accruing thereunder, in the purchase and delivery of the diamonds required for the performance of such contracts; and may retain all other sums paid in thereon, including the remaining twenty-five cents out of each weekly instalment, for its own use and payment of all expenses. This contract is transferable, but no transfer will be recognized by the company unless first registered by the company, for which registration a fee of one dollar will be charged."

Exhibit "B" referred to is in the same form as exhibit "C," while exhibit "A" differs therefrom in that it provides for the payment of money to the contract holder, instead of the sale of a diamond.

The answer admits the allegations of paragraph 1 of the petition, and denies all others.

The judgment or order of the district court appealed from is as follows:

"It is therefore ordered that William Madgett be ap-

pointed receiver of the defendant corporation and all moneys, debts, effects, books and property of every description belonging to or forming a part of defendant corporation, its assets or effects. That its officers, their agents and employees are hereby directed to deliver the same to said receiver, and said receiver is authorized and required, without unnecessary delay, to sell and convert into money any such property or effects as do not consist of money, and to collect all funds due defendant, and to pay all debts due by defendant corporation, and distribute the funds collected or received by virtue of this order to the parties entitled thereto, under the further orders of this court. It is further ordered that, before he enters upon his duties as such receiver, he execute and deliver to the clerk of this court an undertaking, with approved sureties, to the defendant in the sum of one thousand dollars ($1,000), conditioned according to law. It is further ordered that said receiver make report to this court of his doings in this behalf at each term of this court hereafter held, until he be finally discharged."

In the view we take, it will not be necessary to discuss the evidence in the case further than to say, it does not better the case made by the petition. No demurrer to the petition was filed, but objection was made to the introduction of evidence, on the ground that the petition does not state facts sufficient to constitute a cause of action. This was overruled and exception taken.

We think that even under the liberal construction required to be placed on the petition, when attacked first in this manner, the petition does fail to state a cause of action.

By section 267 of our code, "No receiver shall be appointed except in a suit actually commenced and pending." And it is a familiar rule that the action pending must be an action for some relief, or to enforce some right, other than the mere appointment of a receiver.

In the case before us, no action was commenced by the plaintiff which can support the receivership, as a proceed-

ing ancillary thereto; the prayer of his petition conclusively shows this.

"A suit actually commenced and pending" that will support the appointment of a receiver must be one for relief that could be litigated between the parties, even if the application for the appointment be denied. See *Hottenstein v. Conrad*, 9 Kan. 435.

In *Vila v. Grand Island Electric Light, Ice & Cold Storage Co.*, 68 Neb. 222, it is said:

"The suit which must be 'actually commenced and pending' as a condition precedent to an appointment of a receiver, must be one in which the main relief sought is independent of the receivership."

And from *Barber v. International Co. of. Mexico*, 73 Conn. 587, 593, the following language is quoted with approval:

"It is not the office of a court of equity to appoint receivers as a mode of granting ultimate relief. They are appointed as a measure ancillary to the enforcement of some recognized equitable right."

And this court held that a receivership is a purely ancillary remedy and can not be maintained in a proceeding instituted solely for that purpose. It is clear that, judged by these authorities, there was no suit actually commenced and pending in the lower court that will sustain the appointment of a receiver in the case before us. The petition is not a good creditor's bill, for plaintiff is not shown to be a judgment creditor. It will not sustain a stockholder's suit, not being on behalf of all, or other stockholders; neither does it contain sufficient averments. See 2 Cook, Stock and Stockholders (3d ed.), sec. 646.

We think, also, the petition is fatally defective for other reasons. It is alleged that "at all times hereinafter stated, the defendant is and was a corporation duly incorporated and existing under and by virtue of the laws of the state of Nebraska."

While it may be possible to so liberally construe the petition as to hold that the plaintiff therein claims to be

a stockholder of the defendant corporation, yet, taking it in connection with the form of his contract, it clearly shows that he is not such a stockholder.

Cook in his work on Stock and Stockholders (3d ed.), says in section 12: "A share of stock may be defined as a right which its owner has in the management, profits and ultimate assets of the corporation. By the court of appeals of New York it is said that 'the right which a shareholder in a corporation has, by reason of his ownership of shares, is a right to participate according to the amount of his stock in the surplus profits of the corporation on a division, and ultimately on its dissolution, in the assets remaining after payment of its debts.'"

In *Neiler v. Kelley,* 69 Pa. St. 403, it is said:

"A share of stock is an incorporeal, intangible thing. It is a right to a certain proportion of the capital stock of a corporation never realized except upon the dissolution and winding up of the corporation—with the right to receive in the meantime such profits as may be made and declared in the shape of dividends."

It is impossible to hold that the plaintiff is a stockholder in the defendant corporation, and therefore he has no standing in court as a stockholder to secure the appointment of a receiver for the corporation because of the mismanagement of its affairs by its officers under the holding of this court in *Ponca Mill Co. v. Mikesell,* 55 Neb. 98. Even if he were such stockholder, it is doubtful if he can maintain an action, as such, in a court of equity, for, where the real business of the corporation is illegal, courts will not aid a stockholder. *Le Warne v. Meyer,* 38 Fed. 191.

As one sustaining a mere contract relation with the defendant, he is in no better plight. His contract purports to be a contract for the sale of a diamond upon certain terms and conditions; no averment is made that his contract is not what it purports to be, and its terms may not be varied by parol; he does not allege that he has demanded and been refused the delivery of the diamond; he does not

allege damages sustained by him because of any breach of contract by the defendant; he has not recovered judgment against the defendant for any sum, and if the defendant has broken its contract with him, to his damage, he is merely a general creditor of the corporation and has no standing in a court of equity, because he has not pursued his remedy at law. Nowhere in his petition does he allege, in terms, nor does he show by proper averments, that he has no adequate remedy at law.

In *Missouri, Kansas & Texas Trust Co. v. Richardson,* 57 Neb. 617, it is held:

"A creditor whose claim has not been reduced to a judgment, and who has neither a general nor specific lien on his debtor's property, is not entitled to have such property impounded as security for the claim."

In *Merchants Nat. Bank v. McDonald,* 63 Neb. 363, this court hold:

"A creditor whose claim has not been reduced to judgment can not maintain an action against an insolvent corporation for the ratable distribution of its assets among its creditors."

The appellee in his brief uses this language:

"We deem it useless to discuss the only questions argued by the appellant, namely: (1) Is a holder of a contract in defendant's company, a stockholder? (2) A common contract creditor is not entitled to the appointment of a receiver. The controversy in this case presents a different question, one not dependent upon either of the above inquiries. It is this question: Is there a trust relation between plaintiff and defendant, and does plaintiff own jointly with defendant property, or a fund, which is in danger of being lost, removed or materially injured, and by reason thereof is plaintiff entitled to have a receiver appointed?"

By the terms of the contract upon which the plaintiff bases his claim, it is impossible for it to create a trust relation to any fund, any further than every debtor may be held to hold his property in trust for his creditors.

The money paid in by the plaintiff was not to remain in a fund in which he should eventually share, but was to be expended by the defendant in the purchase of a diamond, which clearly shows that the absolute title to the money was in the defendant, and there is no property jointly owned by the plaintiff and the defendant.

Blackstone, combating the proposition that every case is to be decided upon the circumstances, according to the arbitration or discretion of the judge, according to his own notions, says: "The system of our courts of equity is a labored, connected system, governed by established rules, and bound down by precedents, from which they do not depart." "The systems of jurisprudence in our courts, both of law and equity, are now equally artificial systems, founded in the same principles of justice and positive law; but varied by different usages in the forms and mode of their proceedings." "In short, if a court of equity in England did really act, as many ingenious writers have supposed it (from theory) to do, it would rise above all law, either common or statute, and be a most arbitrary legislator in every particular case." 3 Blackstone's Commentaries, 432-434.

Story in his work on Equity Jurisprudence (13th ed.), vol. 1, section 20, says:

"What has been already said upon this subject can not be more fitly concluded than in the words of one of the ablest judges that ever sat in equity. 'There are' (said Lord Redesdale) 'certain principles, on which courts of equity act, which are very well settled. The cases which occur are various, but they are decided on fixed principles. Courts of equity have in this respect no more discretionary power than courts of law. They decide new cases, as they arise, by the principles on which former cases have been decided; and may thus illustrate or enlarge the operation of those principles. But the principles are as fixed and certain as the principles on which the courts of common law proceed.'"

The evil, somewhat prevalent of late, existing in the

form of such corporations as the defendant can, and should be abated by the courts in the proper form of action, as in *State v. Nebraska Home Co.*, 66 Neb. 349, recently decided by this court, and by legislative enactments such as have been made by the recent legislature of this state; and courts of equity need not do violence to the established rules governing the exercise of their rightful powers to relieve parties who, like the plaintiff, have, by their own deliberate acts, placed themselves in his unfortunate condition.

We are clearly of the opinion, that no action was pending in the lower court that justified, or will support, the appointment of a receiver; that the plaintiff can not, upon the facts pleaded, maintain a creditor's bill, neither can he maintain a stockholder's suit; and that the petition does not state a cause of action in favor of the plaintiff for any equitable relief.

We therefore recommend that the order of the district court appointing a receiver be vacated, and the action dismissed.

BARNES and ALBERT, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the order of the district court appointing a receiver is vacated and the action dismissed.

REVERSED.