SOLOMON CRESSMAN ET AL., APPELLANTS, V. ·LUTHER J. BONHAM ET AL., APPELLEES.

FILED MAY 24, 1935. No. 29224.

*David F. Foster, J. P. O'Gara* and *Perry, Van Pelt & Marti,* for appellants.

*John C. Hartigan, George A. Skultety* and *Denney & Denney, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and REDICK, District Judge.

REDICK, District Judge.

Action in equity for injunction and the appointment of a receiver for the Rasse Wholesale Grocer Company, a corporation. The action is brought on behalf of the holders of $17,000 of the preferred stock of the company and two creditors in the aggregate sum of about $8,500. The petition alleges that about the 1st day of April, 1929, the grocer company (hereinafter referred to as the corporation) had been successfully operating a wholesale grocery business with a common stock capitalization of $300,000, all of which was owned by Lorenzo J. Rasse, Lorenzo S. Rasse and Luther J. Bonham, except $7,500 which was owned by plaintiff Katherine Kassebaum; that at said time the common stock was worth in excess of $105 a share; that the defendants Bonham, Lorenzo J. and Lorenzo S. Rasse were acting and managing directors of the corporation ·and completely dominated and controlled

it; that on said 1st day of April, 1929, the defendants
Bonham, the two Rasses and Lloyd Wright entered into a
combination and conspiracy to take over the said company
and all its assets and transfer the same to said defendants
without any consideration; that the scheme was to or-
ganize a corporation to be known as the "Efficiency
Stores," which was to establish a number of retail stores
in the territory theretofore tributary to the corporation
and in which were located the great bulk of its customers
to whom it sold merchandise; that said plan or scheme
contemplated that the defendants, under the name of Effi-
ciency Stores, would purchase groceries and other mer-
chandise from the corporation in large amount, and that
in fact such purchases were made in excess of $160,000;
that defendants have not paid said amount to the grocer
company, but that defendants now have and hold said sum
in trust for said corporation, and are now threatening to
and are about to dissipate said assets and convert the same
to their own use and benefit; that as the result of the
establishment of said stores the grocer company lost its
most valuable customers, and its business and good-will,
which plaintiff alleges was worth not less than $100,000,
were destroyed; that as a further part of said plan and
scheme the bills and accounts receivable and other credits
and property belonging to the grocer company should be
transferred to the defendant Bonham under pretense that
they would be used to finance said Efficiency Stores, and
that the assets so transferred exceeded any indebtedness
of the grocer company by a sum not less than $140,000;
that since April 1, 1929, the defendants have refused and
neglected to function as directors and officers of said cor-
poration and their interests have been adverse and inimical
to said company; that they have threatened to sell and
have transferred all the assets of said company to corpo-
rations and firms who were formerly competitors of the
said grocer company, and that whatever said defendants
have realized from the sale of said merchandise has been
retained by them and is unaccounted for as between said

defendants and the grocer company; that no assets of any considerable value are now in the possession of said Rasse Wholesale Grocer Company, and no provision has been made to pay dividends or retire the preferred stock or pay creditors. Plaintiffs pray that the defendants be enjoined from further dissipating the assets of said company and that a receiver be appointed to liquidate said company, and for further relief.

The defendants Bonham and Lorenzo S. Rasse filed answers specifically denying all the allegations of the petition, and defendant Wright answers denying all the allegations of the petition, and specially that he ever entered into any conspiracy or combination as alleged. Defendant Wright also filed a counterclaim setting up a judgment in his favor against the grocer company and praying that an accounting be had, and that, if it be found that there are any assets of the grocer company in the hands of the defendants, his judgment be decreed a first lien thereon. Plaintiffs filed a reply putting in issue the allegations of the answers and cross-petition.

By the decree of the district court, the prayer for the appointment of a receiver was denied and the petition dismissed, and the counterclaim of the defendant Wright dismissed without prejudice to future actions. Motions for new trial were filed and overruled, and plaintiffs appeal.

The bill of exceptions containing the evidence produced before the trial court is very voluminous and the exhibits very numerous, and we do not think that the interests of the parties, the court or the profession require a detailed examination of the record; suffice it to say that we have read and scrutinized the record with great care, and must content ourselves with a statement, as concise as may be, of what it shows and our conclusions thereon.

It appears that up to the 1st of January, 1929, the grocer company had been doing a fairly successful wholesale grocery business of about three million dollars a year, and making a net business profit for the year 1927 of about $25,000, and for 1928 of about $34,000. Among defend-

ants' principal customers was an organization known as the "Safeway Stores" whose business amounted to about a million dollars a year. In the fall of 1928, without notice, the Safeway Stores withdrew its patronage from the corporation. Prior to that event, and in anticipation of the continuance of said account, the grocer company purchased a very large stock of merchandise, and entered into contracts for considerably more, so that it was excessively over-stocked and its indebtedness exceeded $400,000. The defendant Bonham was president of the First National Bank of Fairbury, where the grocer company was located, and acted as the financial advisor and sponsor of the corporation. The corporation dealt with the bank, and when the limit of loans which the bank could make was reached, loans were procured from banks in Kansas City, Omaha and elsewhere, the corporation giving its notes and Bonham indorsing the same until his liability exceeded the sum of $150,000. Bonham was the owner of $75,000 of the stock of the corporation.

Upon the withdrawal of the patronage of the Safeway Stores, the directors considered ways and means to dispose of the excess merchandise which the corporation had purchased and contracted for, and concluded to establish a number of retail stores (which was permitted by their articles of incorporation) as an outlet. The stores were to be established as a selling agency for the grocer company, and the evidence fails to show that the directors expected any individual profit from the enterprise. It was intended to form a Delaware corporation under the name of "Efficiency Stores" for this purpose, the incorporators being Bonham, the Rasses, and the defendant Wright, and articles were prepared to that end, but were never signed.

About April 1, 1929, the establishment of the retail stores was begun, and within a short period 34 had been started under the name of "Efficiency Stores, Inc." The process was to acquire locations and enter into leases under that name and, as Efficiency Stores had no separate capital, the grocer company furnished the fixtures and

capital necessary to open the stores, and furnished merchandise from its own stock to the extent of about $5,000 a store. These advances and cost of the merchandise were charged to Efficiency Stores on the books of the company. The Efficiency Stores proved a bad investment or adventure, and almost from the start showed a loss, until about December 1, 1929, they were indebted to the grocer company in the sum of about $140,000.

Early in December, 1929, it was determined by the directors that the Rasse Wholesale Grocer Company should be liquidated, and to that end all of the assets of the corporation were sold to the Grainger Brothers Company, wholesale grocers at Lincoln, for the sum of about $246,000 in cash and real estate, withholding from said sale, however, all the accounts and bills receivable of the corporation, which were assigned and transferred to Bonham as security to protect him from loss on account of his indorsement of corporation paper. The propriety or legality of this sale is not attacked, although the meetings of stockholders and directors were informal and without written notice having been given. However, the Grainger Brothers Company is not a party and no relief is prayed to have the sale set aside. The retail stores were closed and liquidated and the proceeds applied to the payment of the indebtedness of the grocer company through the assistance and cooperation of Bonham; all of the bills and accounts receivable collected and other assets coming into the hands of Bonham or the grocer company were applied to the payment of the debts of the corporation as far as they would reach; the assets of the corporation have been exhausted, Bonham being short on the indebtedness of the company to him in the sum of $20,000, and the stockholders, common or preferred, received nothing.

The evidence is entirely insufficient to sustain the allegations of conspiracy. The directors in December, 1929, were confronted with a situation in which hundreds, and perhaps thousands, of mercantile institutions found themselves when the whole machinery of production and commerce

broke down. The company was in the situation of a landowner possessed of many acres and other real property having a great potential value, but with no purchasers for his property. He is described in common language as "land poor," so the grocer company was "merchandise poor," with no customers and a very large indebtedness. The evidence satisfies us that the directors made an honest attempt to secure an outlet for its excess merchandise for the benefit of the corporation and its creditors. They may have taken an unwise course, but they exercised their best judgment, which was all that was required of them, and the record is absolutely devoid of any evidence that they acted fraudulently or in their individual interests; and the evidence also fails to establish that any of the defendants derived any profit from the transactions complained of. That the liquidation of the grocer company was positively called for by the exigency of the situation seems not debatable. If we correctly interpret the facts as revealed by the record, we are unable to perceive what benefit plaintiffs could derive from the appointment of a receiver to recover or conserve nonexistent assets. The only substantial relief sought by the petition in this case is the appointment of a receiver, which is purely an ancillary remedy and cannot be maintained in a proceeding instituted solely for that purpose. *Vila v. Grand Island Electric Light, Ice & Cold Storage Co.*, 68 Neb. 222; *Mann v. German-American Investment Co.*, 70 Neb. 454; *Miller v. Kitchen*, 73 Neb. 711. The request for the appointment of a receiver is addressed to the sound, equitable discretion of the court (*McKenzie v. Beaumont*, 70 Neb. 179), and we think it was properly exercised by the district court, and its judgment is

AFFIRMED.